2005 OK 27

Vicki (Root) YOCUM, Petitioner,

v.

GREENBRIAR NURSING HOME, Fire and Casualty Insurance Company of Connecticut, and the Workers' Compensation Court, Respondents.

No. 100,282.

Supreme Court of Oklahoma.

April 12, 2005.

Walt Brune, Walt Brune, P.C., Ponca City, OK, and Fred L. Boettcher, Boettcher Law Offices, Inc., Ponca City, OK, for Petitioner.[1]

1. Identified herein are only those counsel for the parties whose names appear on briefs or other materials submitted on certiorari.

Steven E. Hanna, Guthrie, OK, for Respondents.

OPALA, J.

¶ 1 The court's certiorari grant stands confined to the single issue whether the Court of Civil Appeals (COCA) erred in its construction of the independent medical examiner (IME) statutory regime, 85 O.S.2001 § 17,[2] by elevating an IME medical assessment of compensable harm to a higher rank of probative value (for *prima facie* effect) than all other admissible expert opinions. We answer in the affirmative and retransfer the case to COCA for its reconsideration of all issues in a manner consistent with today's pronouncement.

## I

## THE ANATOMY OF LITIGATION

¶ 2 Claimant's (Yocum or claimant) compensable condition **stood adjudicated** in August 2001 as that of **a temporarily totally disabled person** from an injury to her neck, back and left shoulder (on 2 February 2000) while working for Greenbriar Nursing Home (Greenbriar or employer). **She was found to be in need of further medical treatment.** Claimant's physician recommended she undergo a psychological evaluation as well as procedures for pain management. Employer's medical expert reached a contrary conclusion. According to his report (dated 11 March 2002) claimant was neither in need of medical care and maintenance nor of treatment for psychological overlay. The report

states that claimant's complaints of anxiety are caused by a pre-existing condition, not by the February 2 injury. The trial judge then ordered four independent medical evaluations to assess claimant's need, if any, for further treatment. These four reports recommended pain management and psychological overlay treatment. On consideration of the entire medical evidence, the trial judge denied the request for treatment, resting his decision on the ground he was "not persuaded . . . that she has psychological problems caused by the injuries." A three-judge panel of the Workers' Compensation Court (WCC) adopted the trial judge's order. Claimant then sought review of the adverse panel decision in the Court of Civil Appeals (COCA).

■ ¶ 3 COCA vacated the panel's order and remanded the claim for further proceedings before the trial judge. Its decision, which rests on a theory chosen *sua sponte* for resolution of a first-impression issue,[3] holds that by its enactment of the independent medical examiner (IME) system[4] the Legislature intended to accord *prima facie* effect to an IME-report assessment. Because COCA concluded that legislative intent to give greater probative value to an opinion by a court-appointed IME is explicitly (or implicitly) reflected in the provisions of 85 O.S.2001 § 17, it addressed to the trial tribunal on-remand directions (a) to give the IME assessments *"prima facie* effect" on the issues of claimant's need for pain management and psychological overlay treatment, (b) to afford the employer an opportunity to present rebuttal proof "of record and not yet

---

**2.** The pertinent text of 85 O.S.2001 § 17 provides:

A. 1. The determination of disability shall be the responsibility of the Workers' Compensation Court. Any claim submitted by an employee for compensation for permanent disability must be supported by competent **medical testimony** which shall include an evaluation by a physician, **including but not limited to, the treating physician or independent medical examiner stating** his or her opinion of the employee's percentage of permanent impairment and whether or not the impairment is job-related and caused by the accidental injury or occupational disease. . . .
* * *

D. 1. The Court shall develop and implement an independent medical examiner system by no later than July 1, 1995. * * * *
(emphasis supplies).

**3.** On resolving a public-law issue, should the aggrieved party's brief advance the wrong reason for a decision's vacation, the reviewing court is free to grant corrective relief from the urged error upon any applicable theory—*i.e.*, any theory that appears to support the assigned error even though it was neither advanced below nor on appeal. *Amos v. Spiro Public Schools*, 2004 OK 4, ¶ 7, 85 P.3d 813, 816.

**4.** See the pertinent terms of 85 O.S.2001 § 17(D), *supra* note 2.

considered" and (c) to "then weigh the evidence before it."

¶ 4 On certiorari granted upon the employer's petition, we now vacate COCA's opinion and, for the reasons to be stated, remand the claim to the appellate tribunal for reconsideration of all the issues before it in a manner not inconsistent with today's pronouncement.

## II

### THE CERTIORARI ARGUMENTS

¶ 5 Employer argues that COCA's elevation of the IME-report assessments (to a higher level of probative value than that accorded other medical opinions) is an impermissible expansion of the statute-ascribed role for court-appointed physicians, which goes far beyond the dimensions contemplated (or intended) by the legislative text. By prescribing a different weight to be given IME opinions, COCA **distorts, if not indeed discards,** the long-established any-competent-evidence standard for review of the panel's factual resolutions[5] and **invests** the court-appointed doctor with "judicial authority" for making findings of fact. Employer asserts that COCA's reliance on Massachusetts and Louisiana law is misplaced. In those states the legislature has explicitly given *prima facie* effect to an IME-report assessment. Louisiana's workers' compensation system is managed by an administrative agency whose **hearing officers**—when confronted with disputed medical facts—**are statutorily mandated to cede all fact-finding authority to a doctor.** Employer claims the Massachusetts IME system is also distinguishable in several respects from that in Oklahoma. According to the employer, even if we assumed COCA was correct concerning the weight to be given an IME opinion, it nonetheless committed fatal error by failing to determine if there is "any competent evidence" to support the panel's findings. Employer urges the panel's denial of the claimant-sought relief is supported by competent evidence.

¶ 6 Claimant, on the other hand, argues the Legislature must have intended for IME opinions to serve as a tie-breaker between dueling "party-sponsored" physicians. She urges us to give legitimacy to the legislative scheme by crafting **either** (a) a presumption in favor of unanimous IME opinions **or** (b) a *prima facie* standard for unanimous IME opinions. According to claimant, a contrary construction will rob core meaning from intended IME utilization. She claims the medical opinion upon which the trial tribunal based its decision lacks probative value when considered in light of all the medical proof as a whole which bears on the medical causation issue. In other words, claimant urges us to review the enactment authorizing the use of IME reports as a legislative call for replacement of the any-competent-evidence standard by the clear-weight-of-the-evidence gauge.

## III

### THE STATUTORY WORKERS' COMPENSATION REGIME

#### A.

*The Institutional Design For A Workers' Compensation Law's Intra–Court Appeal and Its Distinction From the Standard of Review That Governs In The Extra–Court Appellate Process*

¶ 7 A resolution of the sole issue on certiorari requires an explanation of the well-and long-established **statute-based** (a) distinction between an **intra-court appeal** and an extra-court **proceeding for review in the appellate courts**[6] as well as (b) the **standard** that

---

**5.** For the any-competent-evidence test, see note 10 *infra*.

**6.** The distinction between an intra-court appeal and an extra-court review proceeding is explained in *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 8, 684 P.2d 548, 551, where it is stated,

"[t]he trial tribunal's intra-court review scheme ... was intended not to afford two layers of appellate process with varying standards of review but rather to implement a two-tier decisional system within the [same] trial tribunal with but a single appellate remedy in this court."

governs in the appellate courts the review of the trial tribunal's disputed fact findings.

 ¶8 Upon the statute-authorized intra-court appeal, a three-judge panel of the same tribunal may reexamine a trial judge's findings of disputed fact and conclusions of law (85 O.S.2001 § 3.6(A)),[7] while review before COCA and in this court stands **strictly confined** to questions of law (85 O.S.2001 § 26(B)).[8] The three-judge panel's review of the trial tribunal's findings of fact is governed by a clear-weight-of-the-evidence test.[9] When reviewing the panel's factual resolutions of nonjurisdictional issues, this court and COCA alike must apply the any-competent-evidence standard.[10] If rested on competent evidence,[11] findings of nonjurisdictional facts are conclusive and binding on both appellate courts.[12] Any evidence in the record—on the basis of which the trier could have reached a contrary conclusion—is treated in the extra-court process of reviewing a workers' compensation court's findings as without legal effect.[13] **In short, the trial tribunal is the sole judge of the credibility of witnesses and of the weight[14] and value[15] to be accorded to the testimony adduced.**[16] Only in the absence of competent

7. The pertinent provisions of 85 O.S.2001 § 3.6(A) are:

> A....The Court en banc [three-judge review panel] may reverse or modify the [trial judge's] decision only if it determines that such decision was **against the clear weight of the evidence** or contrary to law....

(emphasis added).
*Parks v. Norman Municipal Hospital, supra* note 6, at ¶2,684 P.2d at 549.

8. See the pertinent terms of 85 O.S.2001 § 26(B) which provide:

> ... The decision of the [Workers' Compensation] Court **shall be final as to all questions of fact,** and except as provided in Section 3.6 of this title, as to all questions of law.

(emphasis added).
*See also Parks v. Norman Municipal Hospital, supra* note 6, at ¶12, 684 P.2d at 552 (the text of § 26 "unequivocally and unmistakenly limits appellate reviewing power to questions of law").

9. 85 O.S.2001 § 3.6(A), *supra* note 7; *Parks v. Norman Municipal Hospital, supra* note 6, 684 P.2d at 549.

10. *Farm Fresh, Inc. v. Bucek,* 1995 OK 44, ¶15, 895 P.2d 719, 724; *Benning v. Pennwell Publishing Co.,* 1994 OK 113, ¶6, 885 P.2d 652, 654–55; *Owings v. Pool Well Service,* 1992 OK 159, ¶¶6, 7, 843 P.2d 380, 382–383; *Parks v. Norman Municipal Hospital, supra* note 6, at ¶¶9, 10, 12–14, 684 P.2d at 551–52.

11. "Competency" refers to the legal sufficiency of the admitted evidence to support the decision. In applying the any-competent-evidence standard, it is not this court's duty to weigh the adduced evidence but simply to canvass the facts to determine if the tribunal's decision is supported by competent proof. *PFL Life Ins. Co. v. Franklin,* 1998 OK 32 ¶29, 958 P.2d 156, 167–168; *Darco Transp. v. Dulen,* 1996 OK 50, ¶8, 922 P.2d 591, 594; *Lacy v. Schlumberger,* 1992 OK 54, 839 P.2d 157, 160–61; *see also Parks v. Norman Municipal Hospital, supra* note 6, at

¶12, 684 P.2d at 552. A trial tribunal's award rests on competent evidence when it is supported by the general tenor and intent of the medical testimony. *Bama Pie, Ltd. v. Raes,* 1995 OK 122, ¶11, 905 P.2d 811, 815.

12. *See* the quoted text of 85 O.S.2001 § 26(B), *supra* note 8. If supported by competent evidence, the panel's findings on nonjurisdictional issues may not be disturbed on review. *Thompson v. Anchor Glass Container Corp.,* 2003 OK 39, ¶9, 73 P.3d 836, 838; *B.E. & K. Construction v. Abbott,* 2002 OK 75, ¶1, n. 1, 59 P.3d 38; *Hughes v. Cole Grain Co.,* 1998 OK 76, ¶5, 964 P.2d 206; *Benning v. Pennwell Publishing Co., supra* note 10, at ¶6, 885 P.2d at 654–55; *Parks v. Norman Municipal Hospital, supra* note 6, at ¶¶12–13, 684 P.2d at 549.

13. *Darco Transp. v. Dulen, supra* note 11, at ¶8, 922 P.2d at 594; *Iwunoh v. Maremont Corp.,* 1984 OK 8, ¶4, 692 P.2d 548, 549; *Matter of Death of Sade,* 1982 OK 91, ¶5, 649 P.2d 538, 540.

14. The term "weight" is used in two different senses. (1) It is "a vague term ordinarily used in expressing judgments about the net persuasive effect of a mass of evidence, typically for a case as-a-whole." Terence Anderson and William Twining, ANALYSIS OF EVIDENCE 449 (Weidenfield and Nicholson, London 1991).(2) It "is [also] the term ordinarily employed in assessing the extent to which the whole of the evidence in a case establishes the ultimate *probandum* or *probanda* to the degree of certainty required by the applicable standard of proof." *Id.* at 447

15. "Probative force or value" is "the term usually employed in assessing the significance of specified evidential data for determining whether it should be admitted notwithstanding otherwise improper prejudicial effects the data may have." ANALYSIS OF EVIDENCE, *supra* note 14 at 447.

16. *Peabody Galion Corp. v. Workman,* 1982 OK 42, ¶13, 643 P.2d 312, 315.

evidence may that tribunal's decision be viewed as legally erroneous and hence subject to appellate vacation.[17] **It is against this backdrop of long-established statutory jurisprudence that the 1995 IME legislation must today undergo our scrutiny.**

¶ 9 The goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature.[18] The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses.[19] If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates.[20] Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.[21]

¶ 10 This court is without authority to rewrite a statute merely because it might not comport with its own notions of prudent public policy.[22] We cannot trump a law's validity by employment of some extra-constitutional standards. If the text is plain and unambiguous, our duty stands confined to making it enforceable.

## B.
### *The Use Of The Independent Medical Examiner System—85 O.S.2001 § 17(D)*

¶ 11 There is neither legislative mandate **for departing from** the long-estab-

lished any-competent-evidence standard of review **nor for according** an IME-report assessment an elevated (or lowered) rank for probative value. Unlike the *administratively managed* workers' compensation regimes of Massachusetts [23] and Louisiana,[24] which *statutorily mandate* that IME opinions be treated as "prima facie" proof, the **terms of 85 O.S.2001 § 17(D) allocate no predetermined weight or probative value to the medical opinions** of court-appointed physicians. The only intent divinable from the provisions of § 17(D), when their text is, as it must be, considered together with the terms of 85 O.S.2001 §§ 3.6(A) [25] and 26(B),[26] is that the legal effect and probative value of an IME-report's evaluation of one's impairment or disability **are the same as those of any other admitted evidence in the case.**[27]

¶ 12 In short, there is no textually demonstrable legislative intent to accord an IME report a different rank of probative value. Any other gloss upon § 17 would place its constitutionality in serious doubt. When a statute is susceptible to more than one construction, it must be given that meaning which will free its text from constitutional doubt rather than one that would leave it vulnerable to some lingering infirmities.[28] For our analysis of the fundamental-law concern see Part IV, *infra.*

17. *Darco Transp. v. Dulen, supra* note 11, at ¶ 8, 922 P.2d at 594; *PFL Life Ins. Co. v. Franklin, supra* note 11, at ¶ 29, 958 P.2d at 167–68; *Chromalloy–American, Okla. Div. v. Wright,* 1977 OK 93, ¶ 13, 567 P.2d 71, 73.

18. *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

19. *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438, 460; *TXO Production Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969.

20. *Ross v. Peters,* 1993 OK 8, ¶ 9, n. 17, 846 P.2d 1107, 1119, n. 17; *TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶ 5, 829 P.2d 15, 20; *Forston v. Heisler,* 1961 OK 198, ¶ 11, 363 P.2d 949, 951.

21. *Cooper v. State ex rel. Dep't. of Public Safety, supra* note 18 at ¶ 10, 917 P.2d at 468; *TXO Production Corp. v. Okla. Corp. Comm'n, supra* note 19 at ¶ 7, 829 P.2d at 969; *Cox v. Dawson,* 1996 OK 11, ¶ 6, 911 P.2d 272, 276.

22. *Fulsom v. Fulsom,* 2003 OK 96, ¶ 7, 81 P.3d 652, 655.

23. M.G.L.A. c. 152, § 11A(2); *Scheffler's Case,* 419 Mass. 251, 256–58, 643 N.E.2d 1023, 1028 (1994). The IME report "shall constitute prima facie evidence of the matters contained therein." § 11A(2).

24. La. R.S. 23:1123; *Johnson v. Temple–Inland,* 670 So.2d 388, 393 (La.App.1996). The IME's "report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter." La.R.S. 23:1123.

25. For the pertinent terms of 85 O.S.2001 § 3.6(A), see *supra* note 7.

26. For the pertinent terms of 85 O.S.2001 § 26(B), see *supra* note 8.

27. *Parks v. Norman Municipal Hospital, supra* note 6, 684 P.2d at 549.

28. *Baptist Medical Center of Oklahoma, Inc. v. Aguirre,* 1996 OK 133, ¶ 11, 930 P.2d 213, 219; *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, ¶ 18,

## IV

## STATE FUNDAMENTAL LAW PROHIBITS LEGISLATIVE ENCROACHMENT BY STATUTORY MANDATE THAT WOULD COMPEL A COURT TO ADJUDICATE A FACT IN ACCORDANCE WITH A PREDETERMINED FORMULA WHICH ROBS THE JUDICIARY OF ITS DECISIONAL FREEDOM FOR EVALUATION OF EVIDENCE

¶ 13 The separation-of-powers doctrine interdicts legislative intrusion upon the functions assigned to the judiciary by the constitution.[29] Legislative power is mainly confined to making law, while the judiciary is invested primarily with an adjudicative function—the authority to hear and determine forensic disputes.[30] A legislative removal of the discretionary component in adjudicative process is a usurpation of the courts' freedom that is essential to the judiciary's independence from the other two branches.[31]

¶ 14 A legislative command to adjudicate a fact[32] by a predetermined statutory direction would constitute an impermissible invasion into the realm of judicial independence. It encroaches upon the free exercise of decisionmaking powers reserved to the judiciary.[33] Were the Legislature to require that the Workers' Compensation Court accord an elevated degree of probative value to an IME report its enactment would impermissibly **rob that tribunal of its independent power to establish impairment or disability within the range of received competent evidence.**[34] The Legislature is

833 P.2d 1218, 1229; *State v. Okl. State Bd. For Property & Cas. Rates,* 1986 OK 54, 731 P.2d 394, 398–399.

**29.** By Oklahoma's fundamental law the functions of government are divided among three branches, each of which is forbidden from encroaching upon the powers and responsibilities of the other. Art. 4, § 1, Okl. Const.; *Earl v. Tulsa County Dist. Court,* 1979 OK 157, ¶ 6, 606 P.2d 545, 547; *Puckett v. Cook,* 1978 OK 108, 586 P.2d 721, 722–23; *Jones v. Freeman,* 1943 OK 322, 193 Okl. 554, 146 P.2d 564, 573, *appeal dismissed* 322 U.S. 717, 64 S.Ct. 1288, 88 L.Ed. 1558; *Sterling Refining v. Walker,* 1933 OK 446, 25 P.2d 312, 317–20 syl. 4.

**30.** Adjudication is the exclusive domain of the judiciary while legislation lies in the exclusive domain of the legislature. *Tweedy v. Oklahoma Bar Association,* 1981 OK 12, 624 P.2d 1049, 1052–54; *In re Courthouse of Okmulgee County,* 1916 OK 952, ¶ 0 syl.2, 58 Okl. 683, 161 P. 200, 201.

**31.** Legislative arrogation of factfinding discretion bears some earmarks of kinship to bills of attainder (or a bill of pains and penalties) prohibited by Art. 1 §§ 9, 10, U.S. Const., and by Art. 2 § 15, Okl. Const. A bill of attainder is a legislative act that inflicts punishment without a judicial trial; if the punishment be less than death, the enactment is termed a bill of pains and penalties. It comprehends "a legislative decree of perpetual exclusion from a chosen vocation" or from some other government-conferred advantage. *Ex parte Garland,* 71 U.S. (4 Wall.) 333, 377, 18 L.Ed. 366 (1867) (the Court struck down an oath that was required for admission to practice law in the federal courts); *Cummings v. State of Missouri,* 71 U.S. (4 Wall.) 277, 323, 18

L.Ed. 356 (1866); *United States v. Lovett,* 328 U.S. 303, 316, 106 Ct.Cl. 856, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946) (the Court struck down a legislative determination of guilt that resulted in the loss of wages); *United States v. Brown,* 381 U.S. 437, 443, 85 S.Ct. 1707, 1715, 14 L.Ed.2d 484 (1965) (the Court struck down an act that focused upon easily identifiable members of a class (the Communist Party) and imposed on them the sanction of mandatory forfeiture of a job or office); *Flemming v. Nestor,* 363 U.S. 603, 628, 80 S.Ct. 1367, 1382, 4 L.Ed.2d 1435 (1960) (Douglas, J., dissenting). *See also Haley v. Oklahoma Alcoholic Beverage Control Board,* 1984 OK CIV APP 58, ¶ 21, 696 P.2d 1046, 1050.

**32.** Facts to which the law is to be applied in the process of adjudication are called adjudicative facts. These are facts "about the parties" and must be ascertained from formal proof. *State v. Freeman,* 1968 OK 54, ¶ 65, 440 P.2d 744. They are to be distinguished from "legislative facts," those which are helpful to a court in determining the meaning, effect, content or validity of enactments. *Id.*

**33.** The Legislature **may neither delegate** to the judiciary authority that is primarily legislative in character, *Sterling Refining v. Walker, supra* note 29, **nor restrict** the independence of judicial decisionmaking process. *See in this connection Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

**34.** *City of Tulsa v. Smittle,* 1985 OK 37, 702 P.2d 367, 369; *Raska v. Tulsa Tiling Service,* 1964 OK 258, 397 P.2d 661, 663; *Ridenour v. Van Pick Oil Co.,* 1955 OK 290, 289 P.2d 135, 136.

confined to mandating what facts must be adjudged. It may neither predetermine adjudicative facts nor direct that their presence or absence be found from any proof before a tribunal.

¶ 15 Even if we assumed that sapping the judiciary of its exclusive fact-finding control were constitutionally permissible, a legislative intrusion upon that control may not be inferred from a silent, ambiguous or doubtful statutory text.[35] Without a clear legislative warrant we are neither at liberty to engraft drastic limitations upon, nor curb the authority of, the compensation tribunal.

## V

## THE CLAIM SHOULD BE REMANDED TO THE COURT OF CIVIL APPEALS FOR ITS RECONSIDERATION OF THE ISSUES RAISED IN EMPLOYER'S PETITION FOR REVIEW

¶ 16 COCA's pronouncement, which vacated the claim's denial on a theory chosen *sua sponte*, declined to reach for re-view the critical issue—whether there is competent evidence to support the panel's order. Today's resolution vacates COCA's opinion and reinstates the viability of the yet-unresolved issues that stand tendered by the claimant's petition for review.[36] When this court vacates a COCA opinion, it may address itself to any issue properly tendered by the petition for review or remand the claim to COCA for that court's resolution.[37] Whether the trial tribunal's panel did in fact err in adopting the trial judge's order should be reviewed in the first instance by COCA. We hence retransfer the claim to that court.

## VI

## SUMMARY

¶ 17 The probative value of an IME's opinion on the extent of impairment or disability is evidence to be considered on a footing equal to all other proof in the case. There is no basis in compensation law for authority to drain the judicial process of its very essence by encroaching on the trial tribunal's freedom to rate compensable harm at any point that stands within the range of adduced

**35.** The body of public law that governs workers' compensation is entirely statutory. 85 O.S.2001 § 1 *et seq.* (Workers' Compensation Act). The common law is not invocable in workers' compensation. *Patterson v. Sue Estell Trucking Co. Inc.*, 2004 OK 66, ¶ 6, 95 P.3d 1087, 1088; *Red Rock Mental Health v. Roberts*, 1996 OK 117, 940 P.2d 486, 491; *Earnest, Inc. v. LeGrand*, 1980 OK 180, 621 P.2d 1148, 1152; *Pine, Adm'r v. Davis*, 1944 OK 10, 193 Okl. 517, 145 P.2d 378; *Brooks v. A.A. Davis & Co.*, 1926 OK 965, ¶ 14, 124 Okl. 140, 254 P. 66, 70–71.

**36.** *Claimant argues* on review that (1) the panel's affirmance of the trial tribunal's decision is not supported by competent evidence; employer's only medical report was prepared 16 months before the onset of severe psychological problems and need for pain management; (2) the panel's decision is contrary to compensation law because aggravation of a pre-existing condition entitles a claimant to chronic pain management and medical treatment; and (3) there is no competent evidence for denying claimant's quest for pain management treatment resulting from a work-related injury. *Employer responds* that (1) there is competent evidence to support the panel's affirmance of the trial tribunal's decision; (b) medical reports as well as claimant's testimony support the view that claimant's need for treatment is at best a combination of a pre-existing psychological condition, the work-related injury

and later physical and psychological stressors; the multiple intervening events that have contributed to her current need for treatment have severed the causal nexus with the claimant's underlying compensation claim; (c) employer's medical report was timely; it was prepared some five months after several of the severe psychological events noted in the IME reports; (d) there was no mid-hearing competency objection made to the employer's medical report; neither was there a probative value objection based on timeliness of the employer's medical report.

**37.** *Boren v. Thompson & Associates*, 2000 OK 3, ¶ 26, 999 P.2d 438, 448; *Beets v. Metropolitan Life Ins. Co.*, 1999 OK 15, ¶ 4, 995 P.2d 1071, 1078 (Opala, J., dissenting). The provisions of Rule 1.180(b), Rules of the Supreme Court, 12 O.S.2001, Ch. 15, App. 1 state:

Issues not presented in the petition for certiorari may not be considered by the Supreme Court. Provided, however, if the Court of Civil Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Civil Appeals—address such undecided matters **or it may remand the cause to the Court of Civil Appeals for that Court to address such issues**.... *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438 (Okla.1993).
(emphasis added).

competent evidence. Legislation that either directly or obliquely predetermines an adjudicative fact impermissibly invades the judiciary's exclusive constitutional prerogative of fact-finding. The body of public law that governs workers' compensation benefits is entirely statutory. We are without power to restructure its basic system of judicature. The authority to do so lies within the exclusive domain of the Legislature. Because COCA declined to review the dispositive issue—whether there is competent evidence to support the panel's order—the claim is remanded for that court's disposition of claimant's quest for review of the panel's decision.

¶ 18 On certiorari granted upon the employer's petition, the Court of Civil Appeals' opinion is vacated and the claim is remanded to the division of the Court of Civil Appeals whence it came for reconsideration of all issues in a manner not inconsistent with this court's pronouncement.

¶ 19 WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA and TAYLOR, JJ., concur.

¶ 20 WATT, C.J., KAUGER and EDMONDSON, JJ., concur in result.

¶ 21 COLBERT, J., dissents.

