243 P.3d 1171 (2010)
2010 OK 50
Jordan J. JOBE, Plaintiff/Appellee
v.
STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.
No. 106,504.
Supreme Court of Oklahoma.
June 29, 2010.
Rehearing Denied October 4, 2010.
*1172 A. DeAnn Taylor, Deputy Chief Legal Counsel, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.
Wiley L. Williams, Oklahoma City, OK, and Rick Powell, Foshee and Yaffe, Oklahoma City, OK, for Plaintiff/Appellee.[1]
OPALA, J.
¶ 1 The dispositive issue on certiorari is whether the Court of Civil Appeals erred when it affirmed the district court's order that reduced a driver's license revocation period from three years to a single year. We answer in the affirmative.

I

THE ANATOMY OF LITIGATION
¶ 2 The Department of Public Safety (DPS) revoked Jordan J. Jobe's (motorist, licensee or Jobe) driver's license for a three-year period for driving under the influence of alcohol (DUI) following his third alcohol-related offense committed within five years. Motorist claimed a one-year revocation should have been applied because the third DUI arrest occurred more than five years after the first "revocation commenced" within the meaning of that phrase in 47 O.S.Supp. 2006 § 6-205.1.[2]
*1173 ¶ 3 The quoted phrase is central to the controversy before us. We are called upon to ascertain when a revocation takes effect under the terms of § 6-205.1 for the purpose of computing the length of the revocation period applicable to a motorist's 2007 DUI offense.
¶ 4 The critical facts are undisputed. Motorist's first DUI arrest took place on July 30, 2002. He refused to submit to a state chemical test. On July 31, 2002 his driver's license was seized and he was served an officer's affidavit and notice of revocation. The officer's affidavit was usable as a temporary license with full driving privileges.[3] Motorist timely requested an administrative hearing which operated to stay the revocation order.[4] He (a) withdrew the request prior to the hearing, (b) agreed to an 180-day revocation beginning October 22, 2002 and (c) accepted from DPS a restricted driver's license.[5] Jobe enjoyed full driving privileges from the date of his arrest through October 21, 2002.
¶ 5 Motorist's second DUI arrest occurred on February 18, 2003. A mandatory one-year revocation of his driving privilege followed effective March 20, 2003. He was issued another restricted driver's license which remained in effect during the entire revocation period.
¶ 6 The third DUI arrest occurred August 30, 2007. When motorist failed the blood alcohol test the next day,[6] his driver's license was seized and he was served an officer's affidavit and notice of revocation.[7] His timely request for an administrative hearing operated to stay DPS's revocation order.[8] Following *1174 the hearing on November 9, 2007, DPS sustained the three-year revocation of Jobe's driving privilege and ordered that revocation take effect December 10, 2007.[9]
¶ 7 Motorist brought an appeal to the district court only from that portion of the November 9 order which revoked his driving privilege for a period of three years.[10] He argued the three-year revocation would apply only if the 2002 revocation commenced within five years of his 2007 DUI arrest. According to motorist, the one-year revocation applies in this case because his first license revocation occurred on July 31, 2002, more than five years before his third arrest on August 30, 2007. In support of his position motorist relies on (1) the seizure of his driver's license on July 31, 2002, (2) the revocation notice in the arresting officer's affidavit and (3) the issuance of a temporary driver's license on that date. DPS argued the license revocation in question did not commence until October 22, 2002, the date when the restrictions on his driving privilege first took effect.
¶ 8 The trial court agreed the revocation period should be reduced to one year. According to its decision, a revocation "commences" either at the time of arrest or no later than thirty days after the "notice of revocation" is served on licensee. The trial court found that DPS records incorrectly show October 22, 2002 as the commencement date of the first revocation. The trial court changed the date for the beginning of the third revocation period from December 10, 2007 to September 30, 2007 (i.e., thirty days from the date motorist was served notice of revocation following his third arrest on August 30, 2007).
¶ 9 DPS brought an appeal from the trial court's order. It claimed the trial court erred in finding (a) that it had jurisdiction to determine the commencement date of the first revocation and in finding (b) that revocation commences either at time the arresting officer serves the motorist notice of revocation or, at the latest, 30 days thereafter. DPS further argued that the manner in which the trial court construed relevant statutes operates to render them constitutionally infirm.

The Court of Civil Appeals' Opinion And The Parties' Arguments on Certiorari
¶ 10 The Court of Civil Appeals (COCA) (a) affirmed the trial court's reduction of the revocation period from three years to a single year, but (b) vacated that part of its order which determined the commencement date of the 2002 revocation. According to COCA, Jobe's first DUI-related revocation commenced July 31, 2002, the date he was required to surrender his driver's license, which occurred more than five years before the arrest date that brought about the 2007 revocation. COCA held the trial court had jurisdiction to hear motorist's appeal from the 2007 revocation and found unpersuasive DPS's argument that the trial court's construction of the relevant statutes renders them constitutionally infirm.
¶ 11 DPS claims COCA has misinterpreted the law by erroneously determining that a license revocation commences when a person is required to surrender his driver's license, even though the actual termination effect may be stayed during the appeal process. DPS urges that in this case the critical period would be calculated from October 22, 2002 (the date when Jobe's driving privileges became restricted) to August 30, 2007 (the arrest date preceding his third revocation). *1175 The three-year revocation period would hence apply because the first (2002) revocation took effect within five years of the third (2007) arrest.

II

STANDARD OF REVIEW
¶ 12 The dispositive issue on certiorari presents a question of statutory construction: when does a driver's license revocation take effect (i.e. "commence") within the meaning of 47 O.S.Supp.2006 § 6-205.1(A)(2)(a) and (3)(a)[11] (the statute in effect at the time of the 2007 revocation) for the purpose of ascertaining the length of the revocation period imposable for multiple DUI-related offenses occurring within a five-year period.
¶ 13 Statutory construction presents a question of law[12] which stands before us for de novo review.[13] In that review we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law.[14] The primary goal of statutory construction is to ascertain and give effect to legislative intent.[15] That intent is first divined from the language of a statute.[16] If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates.[17] Only when the intent cannot be ascertained from a statute's text, as when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be invoked for use.[18]

III

THE REVOCATION PERIOD OF A DRIVER'S LICENSE BEGINS (i.e. COMMENCES) PURSUANT TO THE TERMS OF 47 O.S.SUPP.2006 § 6-205.1 WHEN ADMINISTRATIVE ACTS OCCUR WHICH IMPOSE ACTUAL LOSS OF (OR RESTRICTIONS ON) THE LICENSEE'S DRIVING PRIVILEGE

A.

The Statutory Scheme Governing Motorist's 2007 Driver's License Revocation
¶ 14 When a valid driver's license has been surrendered or seized for an alcohol-related offense under the implied consent laws, the arresting officer is required to issue to the arrestee a dated receipt which serves as a temporary driver's license. 47 O.S.Supp. 2005 § 754.[19] The receipt operates as a temporary driver's license for a period of 30 days and constitutes DPS's "notice of revocation of driving privilege ... effective in thirty (30) days."[20] If an arrestee's blood alcohol content is over the legal limit or if he (or she) *1176 refuses to submit to a breath or blood alcohol test, DPS is required to revoke the driver's license for a period provided by the terms of § 6-205.1.[21]
¶ 15 According to the pertinent terms of 47 O.S.Supp.2006 § 6-205.1(A)(2) and (3), the statute in effect at the time of the critical 2007 arrest,[22] a revocation shall be for a period of one year if within five years preceding the date of arrest a "prior revocation commenced" or for a period of three years if, within a five-year period, "two or more prior revocations commenced."
¶ 16 The Legislature defines "revocation of driving privilege" as "[t]he termination by formal action of the Department of a person's privilege to operate a motor vehicle on the public highways. Such action shall include the requirement of the [licensee's] surrender to the Department of said person's driver license." 47 O.S.2001 § 1-155 (emphasis added).
¶ 17 A timely written request for an administrative hearing will operate to stay the DPS revocation order until disposition is effected.[23] The revocation order may be stayed or superseded on appeal to the district court by the licensee's posting of a bond. 47 O.S.Supp.2006 § 6-211(K). Prior to the administrative hearing, DPS may modify its revocation order in hardship cases by imposing certain restrictions on the driving privilege. 47 O.S.Supp.2005 § 754.1.

B.

The Point in Time When Motorist's Driving Privilege Is Legally Lost or Restricted Is the Point When A License Revocation Becomes Effective Pursuant to the terms of 47 O.S.Supp.2006 § 6-205.1
¶ 18 Based on our review of the statutory scheme that governs drivers' license revocations in implied consent cases, we conclude that the Legislature intended the revocation period to begin and become effective at the point in time when the licensee begins to suffer the actual loss of driving privilege or from the imposition of restrictions on the driving privilege during the applicable revocation period. Administrative acts by which a licensee is arrested for DUI, given notice of the revocation's effective date and is issued a temporary driver's license upon the seizure or surrender of a valid driver's license are but preliminary steps to the actual loss of a licensee's unrestricted permission to drive a motor vehicle on the public highways. These mark points in time that stand anterior to the actual loss of driving privilege. They cannot be counted for the purpose of determining the beginning date of one's prior revocation pursuant to 47 O.S.Supp.2006 § 6-205.1.
¶ 19 If either an administrative or a judicial proceeding should prolong the point in time when a revocation becomes effective, the license is not deemed revoked until the effected stay expires and the licensee loses the driving privilege under the affected license or a new driver's license is issued that is burdened by statutory restrictions during the revocation period.
¶ 20 For the purpose of determining the effective date of the motorist's 2002 DUI revocation, we can count only the time during which the licensee suffers from the loss of or the imposition of restrictions on his driving privilege. DPS's July 31, 2002 notice of revocation was to be effective in 30 days. By motorist's timely request for an administrative hearing a stay stood interposed by operation of law to suspend the effectiveness of the statutory 180-day revocation period. Motorist's revocation thus became effective on October 22, 2002 by his own act of withdrawing the hearing request, together with the agreement to a 180-day revocation beginning October 22, 2002 as well as by acceptance of a restricted driver's license on that date. Because the first revocation became *1177 effective October 22, 2002 and the arrest for the third revocation occurred on August 30, 2007, the latter revocation took place within the statutory five-year period authorized by law for imposition by DPS of a three-year revocation pursuant to the terms of 47 O.S.Supp.2006 § 6-205.1

IV

SUMMARY
¶ 21 A revocation period, pursuant to the terms of 47 O.S.Supp.2006 § 6-205.1, begins and becomes effective at the point in time when the licensee suffers from the actual loss of driving privilege or from the imposition of restrictions on the licensee's driving privilege during an applicable revocation period. If the point in time when a revocation is effective is prolonged either by an administrative or a judicial proceeding, the license is not deemed revoked until the stay expires and the licensee loses the driving privilege under the license or a new driver's license is issued subject to statutory restrictions.
¶ 22 Because motorist's first DUI revocation became effective October 22, 2002 and the arrest date preceding his third DUI revocation took place August 30, 2007, the latter date occurred within the statutory five-year period for authorized imposition of a three-year revocation pursuant to the terms of 47 O.S.Supp.2006 § 6-205.1.
¶ 23 The Court of Civil Appeals' opinion is vacated, the district court's order is reversed and the order entered by the Commissioner of the Department of Public Safety stands reinstated.
¶ 24 ALL JUSTICES CONCUR.
NOTES
[1] Identified herein are only those counsel for the parties who have entered an appearance in this cause (as required by Okla.Sup.Ct.R. 1.5(a), 12 O.S.2001, Ch. 15, App.1) and whose names appear on the certiorari briefs.
[2] The pertinent terms of the statute in effect at the time of Jobe's third DUI arrest, 47 O.S.Supp. 2006 § 6-205.1(A)(1-3), provided for three revocation periods.:

A. The driving privilege of a person who is convicted of any offense as provided in paragraph 2 or 6 of subsection A of Section 6-205 of this title, or a person who has refused to submit to a test or tests as provided in Section 753 of this title, or a person whose alcohol concentration is subject to the provisions of Section 754 of this title, shall be revoked or denied by the Department of Public Safety for the following period, as applicable:
1. The first license revocation pursuant to paragraph 2 of subsection A of Section 6-205 of this title or to Section 753 or 754 of this title shall be for one hundred eighty (180) days, which may be modified; provided, any modification under this paragraph shall apply to Class D motor vehicles only;
2. A revocation pursuant to paragraph 2 of subsection A of Section 6-205 of this title, or to Section 753 or 754 of this title shall be for a period of one (1) year if within five (5) years preceding the date of arrest relating thereto, as shown by the records of the Department:
a. a prior revocation commenced pursuant to paragraph 2 or 6 of subsection A of Section 6-205 of this title, or to Section 753 or 754 of this title. Such period shall not be modified, or
* * *
3. A revocation pursuant to paragraph 2 of subsection A of Section 6-205 of this title, or to Section 753 or 754 of this title shall be for a period of three (3) years if within five (5) years preceding the date of arrest relating thereto, as shown by the records of the Department:
a. two or more prior revocations commenced pursuant to paragraph 2 or 6 of subsection A of Section 6-205 of this title, or to Section 753 or 754 of this title. Such period shall not be modified, or
(emphasis supplied)
[3] The text of 47 O.S.2001 § 754(A-C) (the statute in effect at the time of the 2002 revocation) is identical to 47 O.S.Supp.2005 § 754(A-C), infra note 7.
[4] The text of 47 O.S.2001 § 754(D) (the statute in effect at the time of the 2002 revocation) is substantially identical to 47 O.S.Supp.2005 § 754(D), infra note 8.
[5] Jobe's driving privileges were restricted in accordance with the terms of 47 O.S.2001 § 754.1, the statute then in effect.
[6] Licensee's arrest occurred shortly before midnight on August 30, 2007. He failed the blood alcohol test early the next morning, at which time his license was seized and he was given notice of his license revocation.
[7] The pertinent terms of 47 O.S.Supp.2005 § 754(A-C) provide:

A. Any arrested person who has refused to submit to a breath or blood test shall immediately surrender his or her driver license, permit or other evidence of driving privilege to the arresting law enforcement officer.
B. If the evidence of driving privilege surrendered to or seized by the officer has not expired and otherwise appears valid, the officer shall issue to the arrested person a dated receipt for that driver license, permit or other evidence of driving privilege on a form prescribed by the Department of Public Safety. This receipt shall be recognized as a driver license and shall authorize the arrested person to operate a motor vehicle for a period not to exceed thirty (30) days. The receipt form shall contain and constitute a notice of revocation of driving privilege by the Department effective in thirty (30) days. The evidence of driving privilege and a copy of the receipt form issued to the arrested person shall be attached to the sworn report of the officer and shall be submitted by mail or in person to the Department within seventy-two (72) hours of the issuance of the receipt. The failure of the officer to timely file this report shall not affect the authority of the Department to revoke the driving privilege of the arrested person.
C. Upon receipt of a written blood or breath test report reflecting that the arrested person, if under twenty-one (21) years of age, had any measurable quantity of alcohol in the person's blood or breath, or, if the arrested person is twenty-one (21) years of age or older, a blood or breath alcohol concentration of eight-hundredths (0.08) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law, the Department shall revoke or deny the driving privilege of the arrested person for a period as provided by Section 6-205.1 of this title. Revocation or denial of the driving privilege of the arrested person shall become effective thirty (30) days after the arrested person is given written notice thereof by the officer as provided in this section or by the Department as provided in Section 2-116 of this title.
(emphasis added)
[8] The terms of Title 47 O.S. Supp.2005 § 754(D) provide in relevant part:

Upon the written request of a person whose driving privilege has been revoked or denied by notice given in accordance with this section or Section 2-116 of this title, the Department shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after the notice.... A timely request shall stay the order of the Department until the disposition of the hearing unless the person is under cancellation, denial, suspension or revocation for some other reason. The Department may issue a temporary driving permit pending disposition of the hearing, if the person is otherwise eligible. If the hearing request is not timely filed, the revocation or denial shall be sustained.
[9] For the statutory three-year revocation see the provisions of 47 O.S.Supp.2006 § 6-205.1(A)(2), supra note 2. Licensee had full driving privileges during the pendency of the administrative proceedings.
[10] 47 O.S.Supp.2005 § 755; 47 O.S.Supp.2006 §6-211.
[11] For the pertinent terms of 47 O.S.Supp.2006 § 6-205.1 see supra note 2.
[12] Blitz U.S.A., Inc. v. Oklahoma Tax Com'n, 2003 OK 50, ¶ 14, 75 P.3d 883, 888; Mangrum v. Fensco, Inc., 1999 OK 78, ¶ 4, 989 P.2d 461, 462; Wilson v. Wilson, 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212.
[13] Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219; Cooper v. State ex rel Dep't. of Public Safety, 1996 OK 49, ¶ 10, 917 P.2d 466, 468.
[14] The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. Neil Acquisition, L.L.C. v. Wingrod Investment Corp., 1996 OK 125, ¶ 5, n. 1, 932 P.2d 1100, 1103 n. 1; State ex rel. Oklahoma Bar Ass'n v. Spradling, 2009 OK 39, ¶ 4, 213 P.3d 570, 573; Manley v. Brown, 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 455 n. 30.
[15] Yocum v. Greenbriar Nursing Home, supra note 13 at ¶ 9, at 219.
[16] Yocum v. Greenbriar Nursing Home, supra note 13 at ¶ 9, at 219; Nealis v. Baird, 1999 OK 98, ¶ 55, 996 P.2d 438, 460; TXO Production Corp. v. Okla. Corp. Com'n, 1992 OK 39, ¶ 7, 829 P.2d 964, 969.
[17] Yocum v. Greenbriar Nursing Home, supra note 13, at ¶ 9, at 219; Ross v. Peters, 1993 OK 8, ¶ 9, n. 17, 846 P.2d 1107, 1119, n. 17; TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15, 20.
[18] Yocum v. Greenbriar Nursing Home, supra note 13, at ¶ 9, at 219; Cox v. Dawson, 1996 OK 11, ¶ 6, 911 P.2d 272, 276.
[19] For the pertinent text of 47 O.S.Supp.2005 § 754 see supra note 7.
[20] For the terms of 47 O.S.Supp.2005 § 754(B) see supra note 7 (emphasis added).
[21] For the pertinent terms of 47 O.S.Supp.2006 § 6-205.1 see supra note 2; see also 47 O.S.Supp.2005 § 754(C), supra note 7.
[22] For the terms of 47 O.S.Supp.2006 § 6-205.1(A)(2) and (3) see supra note 2.
[23] For the terms of 47 O.S.2001 § 754(D) see supra note 8.