OSCN Found Document:FRANK BARTEL TRANSPORTATION v. STATE ex rel. MURRAY STATE COLLEGE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 FRANK BARTEL TRANSPORTATION v. STATE ex rel. MURRAY STATE COLLEGE
2023 OK 121
Case Number: 121252
Decided: 12/19/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 121, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

FRANK BARTEL TRANSPORTATION, Inc. Plaintiff/Petitioner,
v.
THE STATE OF OKLAHOMA, ex rel. MURRAY STATE COLLEGE, Defendant/Respondent,
¶0 Petitioner Frank Bartel Transportation, Inc., petitioned for writ of certiorari from an order granting partial summary judgment, which presented a claim of first impression under the Governmental Tort Claims Act. We granted the petition for writ of certiorari, reverse the trial court's decision, and remand to the trial court for further proceedings.
CERTIORARI PREVIOUSLY GRANTED;
TRIAL COURT REVERSED;
REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS
Christopher A. Barrow, Emily B. Kosmider, Barrow & Grimm P.C., Tulsa, Oklahoma, for Plaintiff/Petitioner
Tracy E. Neel, Kevin L. McClure, Oklahoma Attorney General, Oklahoma City, Oklahoma, for Defendant/Respondent
KUEHN, J.:
¶1 On March 27, 2019, a sedan owned by Murray State College and driven by a College employee hit head-on a semi truck and trailer owned by Frank Bartel Transportation (FBT). The College employee was killed. The FBT vehicle sustained damage and caught fire and its driver was hospitalized. FBT submitted a claim under the Government Tort Claims Act, 51 O.S. Sections 151 et seq., to the State of Oklahoma Risk Management Department of the Office of Management and Enterprise Services (OMES). OMES offered to settle the case for $25,000. FBT refused.
¶2 OMES maintains that the claim is for property loss only, and thus controlled by the $25,000 statutory cap in 51 O.S. Section 154(A)(1). FBT claims that, in addition to the direct property loss of its vehicle, it sustained consequential damages of $68,636.61, for towing, vehicle storage, and vehicle rental, and thus the claim is subject to the $125,000 statutory cap in 51 O.S. Section 154(A)(2). FBT moved for partial summary judgment, asking which statutory section controlled. On March 27, 2023, the district court determined that FBT's damages were all for loss of property and subject to the Section 154(A)(1) cap of $25,000. The district court certified that order for immediate appeal, as it affected a substantial part of the merits, and immediate appeal would materially advance the ultimate termination of the litigation. 12 O.S. § 952(b)(3). This Court accepted certiorari and we now reverse.
Review of a Certified Interlocutory Order
¶3 The district court's order was made as the result of a motion for partial summary judgment. Reflexive application of Supreme Court Rule 1.50 would not permit review of a certified interlocutory order on a motion for summary judgment. Rule 1.50, Rules of the Oklahoma Supreme Court, Title 12, ch. 15. app. 1. However, when applying Rule 1.50 we look at the contents of a pleading, not merely its title. See Purvey v. State, 1995 OK 103, ¶ 4, 905 P.2d 770, 771 (in GTCA case, pleading titled motion for summary judgment was substantively a motion to dismiss, and thus reviewable); Roach v. Jimmy D. Enterprises, 1996 OK 26, ¶ 3, 912 P.2d 852, 853-54 (motion for summary judgment was reviewable as a substantive request to decide legal issue of statutory interpretation). It is clear from the face of the order that the court's ruling settled a question of law. The trial court neither granted nor denied the motion for partial summary judgment. Rather, it found as a matter of law that FBT's damages resulted from loss of property under Section 154(A)(1), and ordered that FBT's damages were subject to the GTCA $25,000 cap. Because this legal determination -- an issue of first impression -- would affect any further proceedings on the merits, the trial court certified the order for immediate appeal. And that is why this Court granted certiorari: to settle a pure question of law involving statutory interpretation. Our review is de novo. Ghoussoub v. Yammine, 2022 OK 64, ¶ 11, 518 P.3d 110, 113.
Analysis
Statutory Language
¶4 The GTCA was enacted to settle questions of tort liability arising from the "multi-addered medusa" of state agencies which increasingly performed both governmental and proprietary functions. Vanderpool v. State, 1983 OK 82, ¶ 9, 672 P.2d 1153, 1154-55. It contains explicit and exclusive waivers of the State's immunity from suit. Barrios v. Haskell Cnty. Pub. Facilities Auth., 2018 OK 90, ¶ 8, 432 P.3d 233, 237. The portion of Section 154at issue states:
A. The total liability of the state and its political subdivisions on claims within the scope of The Governmental Tort Claims Act, arising out of an accident or occurrence happening after October 1, 1985, Section 151 et seq. of this title, shall not exceed:
1. Twenty-five Thousand Dollars ($25,000.00) for any claim or to any claimant who has more than one claim for loss of property arising out of a single act, accident, or occurrence;
2. Except as otherwise provided in this paragraph, One Hundred Twenty-five Thousand Dollars ($125,000.00) to any claimant for a claim for any other loss arising out of a single act, accident, or occurrence.
51 O.S. § 154(A) (1), (2). This Court has recognized that, where a claim arises from a single accident or occurrence, it may be split into a claim for property damage and a claim for "any other loss". Grisham v. City of Oklahoma City, 2017 OK 69, ¶ 9, 404 P.3d 843, 847-48. However, those terms are not defined by the GTCA, and we have not until now explained their scope.
¶5 In interpreting the GTCA we look, first, to the plain language of the statute itself. I.T.K. v. Mounds Public Schools, 2019 OK 59, ¶ 20, 451 P.3d 125, 135. As we have previously explained,
The goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature. The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates. Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.
Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. We may not add words that are not there. OKC Zoological Trust v. State ex rel. Pub. Employees Relations Bd., 2007 OK 21, ¶ 6, 158 P.3d 461, 464. If a statute omits a word or phrase, we will presume that is what the Legislature intended. Broadway Clinic v. Liberty Mutual Ins. Co., 2006 OK 29, ¶ 16, 139 P.3d 873, 877. The language in Section 154(A)(2), "any other loss", is broad enough to encompass consequential damages.
¶6 The history of Section 154(A) supports a conclusion that the Legislature intended to include consequential damages in "any other loss". Before 1984 Section 154(A)(1) included the phrase "consequential damages". In 1984, the Legislature amended the provision:
1. Twenty-five Thousand Dollars ($25,000.00) for any claim or to any claimant for any number of claims for damage to or destruction of property, including consequential damages who has more than one claim for loss of property arising out of a single accident or occurrence;
Act of the 39th Legislature, 2d Sess., ch. 226, § 5 (to be codified at 51 O.S.Supp.1984, § 154(A)(1). The same amendment added the provision in Section 154(A)(2) for a separate claim for "any other loss" arising from a single accident or occurrence. Act of the 39th Legislature, 2d Sess., ch. 226, § 5 (to be codified at 51 O.S.Supp.1984, § 154(A)(2). That is, the Legislature removed language lumping consequential damages with claims for property loss and added language separating claims for other losses from property loss. It is difficult to read this history as anything other than a clear expression of an intention to allow a separate recovery for consequential damages under Section 154(A)(2).
Property Loss and Consequential Damages
¶7 Property damage includes physical and tangible injury or destruction to real or personal property. Consequential damages are "losses that do not flow directly and immediately from an injurious act but that result indirectly from the act." Black's Law Dictionary (11th ed. 2019). OMES's argument conflates damages for indirect losses with damages for loss of real property. Traditionally, damages for repairable property include the cost of repair and value of any loss of use during repair. Brennen v. Aston, 2003 OK 91, ¶ 9, 84 P.3d 99, 101. When a plaintiff shows that its property has diminished in value after repair, that subsequent loss of value may also be recoverable in a claim for property loss. Id., ¶ 12, 84 P.3d at 102.
¶8 OMES relies on this rule to argue that FBT's consequential damages are merely a subset of the actual physical damage to its property because its towing and storage costs, and rental costs while awaiting a replacement, were inevitable when the truck was damaged beyond repair and thus are "directly linked" to FBT's property damage. But that's not what Brennen says. Brennen's measure of damages applies to costs stemming directly from the loss of a repairable property itself: damage to a truck plus cost of repairs of the truck plus the truck's diminished value after it is repaired. This isn't relevant to FBT's claim. FBT's truck could not be repaired, and it had neither repair costs nor depreciation in value. Nor are the towing, storage, and rental costs a direct result of the damage to FBT's truck. A responsible business might well, after its truck was irreparably damaged on a road, take measures to tow and store the vehicle. Arguably, a business owner might choose to avoid those costs by personally retrieving the truck, abandoning it, giving it away. Towing and storage costs are not an inevitable result of the property damage. The mere fact that these costs arose because FBT's property was damaged does not prove that they are directly linked. The law includes a separate category of consequential damages -- "any other loss" under Section 154(A)(2) -- precisely because, after property is damaged, a plaintiff may suffer harm that would not otherwise have occurred in addition to the actual property loss.
¶9 OMES also claims that FBT's claim for the cost of renting a similar truck while awaiting its replacement is part of the property loss of the original truck. It mistakenly relies on DTS Tank Service, Inc. v. Vanderveen, 1984 OK 49, 683 P.2d 1345. The issue there was whether a plaintiff could recover damages, including lost profits while awaiting a replacement, for loss of use of a commercial truck destroyed beyond repair. The plaintiff claimed it was not possible to rent a substitute while awaiting delivery of the replacement. We held that a plaintiff could plead loss of use when suing for damages, but to be fully compensated he must show that he could not have mitigated the loss by renting a temporary replacement while awaiting delivery. DTS Tank Service, 1984 OK 49, ¶ 18, 683 P.2d at 1347. The case doesn't hold that the cost of the rental replacement is relevant at all; the requirement is that, for a claim of loss of use, a plaintiff show it could not rent a replacement, not how much the rental cost would be. DTS Tank Service says nothing about how an actual claim for rental costs should be brought, or into which category of damages it might fall.
¶10 We have previously looked at the distinction between property loss and consequential damages involving a similar but distinct GTCA claim. In Truelock v. City of Del City, 1998 OK 64, 967 P.2d 1183, plaintiffs' home suffered repeated flood damage. They sued under the GTCA for property damage as well as damages for inconvenience, annoyance, and discomfort. The Court of Civil Appeals held that the latter claims were in the nature of property damages, and thus subject to the $25,000 cap under Section 154(A)(1). Truelock, ¶ 4, 967 P.2d at 1186. This Court disagreed. Relying on settled law, we noted that claims for inconvenience, annoyance, and discomfort are personal injury claims. Id. at ¶ 14, 967 P.2d at 1187. In Truelock and the cases on which it relied, we clearly held that such claims may have risen from the same occurrence as a claim for property damage, but were wholly separate from it. Oklahoma City v. Eylar, 1936 OK 614, ¶ 11, 177 Okla. 616, 61 P.2d 649, 651; see, e.g., Oklahoma City v. Tytenicz, 1935 OK 433, ¶ 9, 171 Okla. 519, 43 P.2d 747, 748 (inconvenience, annoyance and discomfort cause of action is injury to the person); City of Holdenville v. Kiser, 1937 OK 29, ¶¶ 4-5, 179 Okla. 216, 64 P.2d 1223, 1225 (same); Phillips Petroleum Co. v Ruble, 1942 OK 93, ¶¶ 10-11, 191 Okla. 36, 127 P.2d 526, 527 (same). And, as separate damages, Truelock's claims were properly categorized as claims for "any other loss" and subject to the larger cap under Section 154(A)(2). Truelock, 1998 OK 64, ¶ 14, 967 P.2d at 1187.[1] Other jurisdictions have also concluded that property damage is limited to tangible property, while claims for loss of use, diminution of assets, etc., are consequential losses. Exxon Mobil Corp. v. Albright, 433 Md. 303, 71 A.3d 30, 89 (Ct. App. Md. 2013) (vehicle storage resulting from property loss is consequential damages); Felder v. State Farm Mutual Automobile Ins. Co., 494 N.W.2d 704, 705 (Iowa 1993) (loss of consortium is personal injury, not property loss); Duggan v. Bd of Cnty. Comm'rs of Cnty. Of Weld, 747 P.2d 6, 9 (Colo. App. 1987) (rental value of replacement vehicle is consequential damages); Borden, Inc. v. Howard Trucking Co., 454 So.2d 1081, 1090 (La. 1983) (on rehearing) (loss of use was consequential loss, not property loss, covered by insurance policy).
¶11 OMES argues that Truelock does not apply because it involved a nuisance claim, not a specific claim of this type of damages under the GTCA. But, as illustrated by cases from other jurisdictions, the legal principle is the same: where a plaintiff suffers injury as an indirect result of property damage, that may be compensable by consequential damages. On its face "any other loss" encompasses more than just nuisance claims. The Legislature deliberately chose that expansive phrase when it amended Section 154(A)(2) almost forty years ago. It would be unreasonable to conclude that the Legislature intended to limit it to nuisance or personal injury claims. We will not presume the Legislature to have done a vain thing. Ghoussoub, 2022 OK 64, ¶ 26, 518 P.3d at 116.
Conclusion
¶12 Section 154(A) of the GTCA allows for separate claims for property loss and any other loss caused by actions of the State or its political subdivisions. Property loss includes the tangible injury to or destruction of real or personal property. Consequential losses are incurred from injury which arises indirectly from the property loss. FBT incurred costs for towing, storage, and rental replacement. These consequential damages fall within the "any other loss" provision of Section 154(A)(2), and FBT's recovery is subject to that statute's $125,000 cap.
CERTIORARI PREVIOUSLY GRANTED;
TRIAL COURT REVERSED;
REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS
ALL JUSTICES CONCUR.
FOOTNOTES
[1] OMES refers this Court to a Court of Civil Appeals case, Taylor v. Delaware Cnty. Solid Waste Trust Auth., 2021 OK CIV APP 48, 503 P.3d 1216. In that case COCA found plaintiff's nuisance claim was not entitled to recovery under the GTCA and thus Truelock did not apply. Given this conclusion, the case does not aid our analysis.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2021 OK CIV APP 48, 503 P.3d 1216, 
TAYLOR v. DELAWARE COUNTY SOLID WASTE TRUST
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1937 OK 29, 64 P.2d 1223, 179 Okla. 216, 
CITY OF HOLDENVILLE v. KISER
Discussed at Length

 
1936 OK 614, 61 P.2d 649, 177 Okla. 616, 
OKLAHOMA CITY v. EYLAR
Discussed at Length

 
1935 OK 433, 43 P.2d 747, 171 Okla. 519, 
OKLAHOMA CITY v. TYTENICZ
Discussed at Length

 
1995 OK 103, 905 P.2d 770, 66 OBJ 3181, 
Purvey v. State
Discussed

 
2003 OK 91, 84 P.3d 99, 
BRENNEN v. ASTON, Jr.
Discussed

 
2005 OK 27, 130 P.3d 213, 
YOCUM v. GREENBRIAR NURSING HOME
Discussed

 
1996 OK 26, 912 P.2d 852, 67 OBJ 803, 
Roach v. Jimmy D. Enterprises, Ltd.
Discussed

 
2006 OK 29, 139 P.3d 873, 
BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed

 
2007 OK 21, 158 P.3d 461, 
OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed

 
2017 OK 69, 404 P.3d 843, 
GRISHAM v. CITY OF OKLAHOMA CITY
Discussed

 
2018 OK 90, 432 P.3d 233, 
BARRIOS v. HASKELL COUNTY PUBLIC FACILITIES AUTHORITY; FOUTCH v. TURN KEY HEALTH
Discussed

 
2019 OK 59, 451 P.3d 125, 
I. T. K. v. MOUNDS PUBLIC SCHOOLS
Discussed

 
2022 OK 64, 518 P.3d 110, 
GHOUSSOUB v. YAMMINE
Discussed at Length

 
1998 OK 64, 967 P.2d 1183, 69 OBJ 2402, 
TRUELOCK v. DEL CITY
Discussed at Length

 
1942 OK 93, 126 P.2d 526, 191 Okla. 37, 
PHILLIPS PETROLEUM CO. v. RUBLE
Cited

 
1983 OK 82, 672 P.2d 1153, 
Vanderpool v. State
Discussed

 
1984 OK 49, 683 P.2d 1345, 
DTS Tank Service, Inc. v. Vanderveen
Discussed at Length

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 952, 
Jurisdiction of Supreme Court
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 154, 
Extent of Liability
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA