(667 P.2d 893)
No. 54,575

STATE OF KANSAS, *Appellant/Cross-Appellee,* v. ONE 1978 CHEVROLET CORVETTE VIN# 1Z87L8S437138.

Opinion filed August 11, 1983.

*Kyle G. Smith,* assistant county attorney, *Rodney H. Symmonds,* county attorney, and *Robert T. Stephan,* attorney general, for the appellant/cross-appellee.

*Neil Roach,* of Roach and Mellinger, P.A., of Emporia, for the appellee/cross-appellant Frederick Rodriguez.

Before FOTH, C.J., SPENCER and PARKS, JJ.

FOTH, C.J.: This is an in rem proceeding under K.S.A. 65-4135 to forfeit a 1978 Chevrolet Corvette which had been used to transport marijuana for sale. The primary question is whether, after a forfeiture proceeding is instituted, a person with actual knowledge of its pendency may acquire a security interest in the subject matter of the proceeding which will be superior to the interests of the law enforcement agency which instituted the proceeding. The trial court held such an after-acquired security interest to have priority. We reverse on that issue.

The chronology was:

On March 16, 1981, the Corvette was used by its owner, Frederick Rodriguez, to transport a brown grocery sack containing twelve one-ounce baggies of marijuana to a residence in Emporia where the marijuana was sold.

On May 29, 1981, Rodriguez was charged with the sale of marijuana. He retained the law firm of Roach and Mellinger, P.A. (Roach), to represent him.

On August 10, 1981, the present proceeding to forfeit the car was instituted by the filing of a petition verified by the county attorney. The petition was accompanied by a motion for seizure, similarly verified, detailing the claimed basis for forfeiture. An order for seizure was issued by the district court the next day,

and executed on August 14th by seizure of the automobile and its impoundment by the Emporia police department.

On August 24, 1981, Rodriguez was bound over for trial after preliminary hearing.

On September 1, 1981, Rodriguez served a motion to dismiss the forfeiture petition and for return of the car. The motion was signed and served by Rodriguez's attorneys, the Roach law firm.

On September 14, 1981, Rodriguez was arraigned.

On October 8, 1981, Rodriguez's motion to dismiss this proceeding was heard.

On November 30, 1981, Rodriguez pleaded guilty to one count of sale of marijuana, specifically admitting that he had used the Corvette to transport the marijuana sold as alleged in the present petition. He was represented at the plea by the Roach law firm.

On December 10, 1981, Rodriguez granted to the Roach law firm a security interest in the Corvette to secure fees due the firm for services in the criminal action and the present forfeiture action. The Roach security interest was duly endorsed on the certificate of title, which had been in Rodriguez's possession all along.

Later the Roach law firm moved to intervene in this proceeding for the purpose of asserting its security interest. So did Citizens National Bank and Trust Company of Emporia, which had a security interest in the car perfected prior to the seizure. The State moved for summary judgment.

The trial court permitted both lienholders to intervene and on June 15, 1982, sustained the State's motion, directing a sale of the car. In so doing the trial court found both security interests to be superior to the State's claim of forfeiture under its reading of K.S.A. 65-4135(a)(4)(D).

The State concedes the superiority of the bank's pre-existing lien but appeals as to Roach's after-acquired lien. Rodriguez cross-appeals from the order of forfeiture itself, which upheld the constitutionality of the forfeiture statute.

The priority issue raised on the State's appeal requires analysis of the pertinent provisions of K.S.A. 65-4135, part of the uniform controlled substances act:

"(a) The following are subject to forfeiture: (1) All controlled substances which have been manufactured, distributed, dispensed or acquired in violation of this act;

"(2) all raw materials, products and equipment of any kind which are used or

intended for use in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance in violation of this act;

. . . .

"(4) all conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale or receipt of property described in paragraph (1) or (2) . . . ."

Subsection (4), the "conveyance" provision, has four qualifications designated (A) through (D). Subpart (A) exempts from forfeiture common carriers unless the owner is privy to the illegal act. Subpart (B) exempts any conveyance if the owner can establish that the illegal act or omission was "committed or omitted without his knowledge or consent." Subpart (C) exempts any vehicle where the violation involves only certain "prescription only" drugs. Subpart (D), with which we are here concerned, provides:

"(D) a forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of nor consented to the act or omission . . . ."

Rodriguez's argument, which was accepted by the trial court, has three parts: (1) Despite the seizure, title to the car did not vest in the State until forfeiture was decreed by the court. (2) Until forfeiture, the owner was free to exercise any of the rights of ownership except possession. (The statute specifically says seized property is not subject to replevin but is to remain in the custody of the seizing agency subject to court order.) (3) The forfeiture is subject to any lien existing at the time it is decreed so long as the lienholder did not have knowledge of the underlying criminal acts prior to their commission.

We have no quarrel with the first proposition, although we find it to have little relevance to the issue at hand. The other two arguments, we think, overlook the essential nature of the forfeiture statute and especially the purpose behind the statute's qualifications of the forfeiture of conveyances.

Forfeiture statutes are premised on the notion that the thing to be forfeited has itself offended society, either because it is contraband or has been used to violate laws deemed of special social importance. See, *e.g.*, K.S.A. 22-3901 *et seq.; State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976). Unless the forfeiture statute specifically requires it, a criminal conviction is not a prerequisite to forfeiture. *State v. McManus,* 65 Kan. 720, 70 Pac. 700 (1902); *The Palmyra,* 25 U.S.

(12 Wheat.) 1, ·14-15, 6 L.Ed. 531 (1827). Although enforced· through proceedings in rem, forfeitures are penal in nature. *United States v. U.S. Coin & Currency,* 401 U.S. 715, 28 L.Ed.2d 434, 91 S.Ct. 1041 (1971).

In determining that offending property should be forfeited the legislature must also determine whether to protect the rights of those having an "innocent interest" in the property. *United States v. One Ford Coupe,* 272 U.S. 321, 332, 71 L.Ed. 279, 47 S.Ct. 154 (1926). It was there held that a vehicle used to transport untaxed liquor could be forfeited under the federal revenue laws even though the owner had no guilty knowledge that it was to be used for an illegal purpose. This was in contrast to the protection afforded innocent owners in certain vehicle forfeitures under the Prohibition Act.

Here, in adopting the uniform controlled substance act, our legislature obviously opted for protection of innocent interests. Common carrier owners, vehicle owners, and lienholders are fully protected if they have no prior guilty knowledge of the criminal act. To this extent we agree with Rodriguez's third proposition; the owner or lienholder who is unaware at the time of the illegal use of his vehicle has no means of protecting his interests and should not be penalized. But this rationale applies only if the "innocent" party holds the ownership or lien interest at the time of the illegal act. If he acquires the interest later, with knowledge of the prior illegal use, his interest cannot fairly be called an "innocent" interest worthy of protection.

In this case there is no contention that the Roach law firm had any knowledge of Rodriguez's illegal use of the car prior to that use. However, at the time it acquired its security interest it knew not only of the illegal use but of the State's seizure under court order. Under subpart (D) of the statute, to be protected the lienholder must have a "bona fide" security interest as well as be without knowledge of the illegal act. Although "bona fide" is not defined in this statute, the accepted legal connotation includes value, good faith, and *lack of notice* of adverse claims. See K.S.A. 84-3-302, 84-8-302; *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, Syl. ¶ 9, 624 P.2d 971 (1981). *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, Syl. ¶ 5, 549 P.2d 927 (1976); 77 Am. Jur. 2d, Vendor and Purchaser § 644; Black's Law Dictionary (4th ed. rev. 1968) "Bona Fide Mortgagee," "Bona Fide Purchaser," pp. 223, 224.

Those who acquire an interest with notice of prior adverse claims generally take subject to those claims. See, *e.g.*, the *lis pendens* provisions of K.S.A. 1982 Supp. 60-2201. Here Roach acquired its interest with full knowledge of the pending forfeiture proceedings. Under accepted priority principles that interest is subordinate to the prior interest of the State.

We are not persuaded by the argument that because Rodriguez still had title to the car until the forfeiture decree he was free to dispose of it as he saw fit. Under that argument he could have sold it for cash in hand as well as used it for security; an owner is just as protected if he had no prior knowledge of the illegal acts. as is a lienholder. To permit the guilty owner to realize the value of the car by sale to an "innocent" owner or by mortgage to an "innocent" lienholder after seizure would defeat more than just the penal aspects of the statute. In case of a sale there could be no forfeiture; in case of a lien there could well be nothing left to forfeit. Either way the legislative intent to penalize the guilty owner would be frustrated.

We need not determine whether a purchaser or lienholder who acquired his interest after the seizure but without actual notice would be protected — although the State's physical custody might well be constructive notice. We hold that a lienholder who acquires his interest after seizure and with actual notice does not have a "bona fide security interest" under K.S.A. 65-4135(a)(4)(D), so that a forfeiture of a conveyance under that statute is not subject to the lienholder's interest. The trial court therefore erred in holding that the forfeiture was subject to Roach's security interest.

On the cross-appeal Rodriguez challenges the constitutionality of the forfeiture on due process grounds because the statute does not contain any prescribed procedure for notice and hearing.

The State challenges Rodriguez's standing to maintain the cross-appeal. It asserts that by virtue of the security interest given to Roach he no longer has any interest in the car which is the subject matter of the litigation, and is therefore not the real party in interest. However, if Rodriguez were able to defeat the entire forfeiture at least part of the proceeds of the car would be applied to Rodriguez's bill for attorney fees, to his obvious benefit. We cannot say he has no interest in the outcome.

That does not mean, however, that he has standing to make the contention he does. Although the record is not clear as to just when Rodriguez was notified of the seizure, the car was in his possession when seized. The State asserts, and Rodriguez does not deny, that Rodriguez was served with the Petition, Motion for Seizure, and Order of Seizure. Presumably this was accomplished at the time of seizure on August 14, 1981. In any event, he appeared in the proceeding by counsel through his motion of September 1, 1981, and thereafter participated in all subsequent hearings. It is apparent that Rodriguez received the notice and opportunity to be heard required by due process. He is not in a position to argue that others might be denied *their* constitutional rights. *State v. Thompson,* 221 Kan. 165, 558 P.2d 1079 (1976).

Were the matter properly before the court, K.S.A. 65-4135 would probably pass constitutional muster anyway. A right to notice and hearing may be deemed to be implied in the statute or such a requirement can be grafted onto the statute by authoritative judicial interpretation. This has been done in other contexts:

"The concept of providing a hearing to conform a statute to the constitutional requirements of due process is not novel. Our habitual criminal act (K.S.A. 21-107a) has never expressly provided for a hearing on the question of prior felony convictions. Nevertheless this court has held that the requirements of due process include the right to such a hearing and that it therefore must be made available under that statute (see *Levell v. Simpson,* 142 Kan. 892, 52 P.2d 372). In *Cities Service Gas Co. v. State Corporation Commission,* 192 Kan. 707, 391 P.2d 74, we find this:

" '. . . this court has recognized the rule that where no express provision for notice is made in the statute, if there be nothing in the statute which prevents notice from being given, the requirement of reasonable notice will be implied. [Citations omitted.]' (p. 713.)" *State, ex. rel. v. A Quantity of Copies of Books,* 197 Kan. 306, 315, 416 P.2d 703 (1966), *rev'd mem. per curiam* 388 U.S. 452, 18 L.Ed.2d 1314, 87 S.Ct. 2104 (1967).

See also *Tatlow v. Bacon,* 101 Kan. 26, 28-29, 165 Pac. 835 (1917).

The trial court disposed of the constitutional argument by saying:

"K.S.A. 65-4135 does not specifically spell out the procedural steps for forfeiture because it is not necessary. The procedure utilized by the State in this case is the correct procedure. It is not necessary that procedure be spelled out in the statute."

We agree.

Affirmed as to the cross-appeal. Reversed as to the appeal and remanded with directions to decree the forfeiture subject only to the security interest of the Citizens National Bank and Trust Company.