In the Matter of NOTICE of SEIZURE AND INTENDED FORFEITURE of ONE 1985 TWO DOOR BMW MODEL 325, VIN #WBAAB640F1210839, 1985 TEXAS LICENSE TAG 96 PNH.

James McKINNEY, Sr., James McKinney, Jr., Denise McKinney Hicks, Vera Youngbloom; and, John Echols, Appellants,

v.

STATE of Oklahoma, Appellee.

No. 73342.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 22, 1991.

John David Echols, Tulsa, for appellants.

D.K. Cunningham, Sallisaw, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

This appeal arises from an action in which the State of Oklahoma (State) obtained a judgment of forfeiture of a 1985 model automobile (BMW) owned by one of the Appellants, James McKinney, Jr. (James). The other Appellants are: James' father, James McKinney, Sr. (McKinney); James' mother, Denise McKinney Hicks (Hicks); James' grandmother, Vera Youngbloom (Youngbloom); and, James' attorney, John Echols (Echols). The material facts are not disputed.

In November, 1988, James drove the BMW to a dwelling in Wagoner County, Oklahoma, and parked in front of the residence. The property was owned by third persons and James was there without permission. Unknown to him, James was under the surveillance of a peace officer, Norman Stephens. Approximately 10 to 15 minutes later, Stephens observed James come out of the house carrying a black VCR and walk toward the BMW. James became aware he was being observed, turned around, and went back into the house. Stephens had called for assistance, additional officers arrived, and James was arrested for burglary. The BMW was confiscated by the police.

James was charged with burglary in the second degree, a preliminary hearing was held, and he was bound over for trial. Later, he entered a plea of nolo contendere, was found guilty, and was placed on a deferred sentence. This action was filed to forfeit the BMW pursuant to 21 O.S.Supp. 1987 § 1738. All parties agree, for the purpose of this case, that James committed the crime of burglary in the second degree.

Each Appellant filed a claim against the BMW. McKinney furnished $10,000.00 to purchase the BMW and he claims a lien or security interest. Hicks furnished $7,200.00 to repair the BMW and another vehicle as a result of a collision, and she claims a lien or security interest. Youngbloom loaned James $2,500.00 to pay attorney fees arising from the burglary charge, and she claims a lien or security interest. Echols claims a lien or security interest for $2,500.00 unpaid attorney's fees in addition to the $2,500.00 retainer furnished by Youngbloom. James filed a claim for $10,000.00 for the original purchase price of the BMW. We note that these claims total either $32,200.00 or $22,200.00 [1] against this BMW that was four (4) years old when the forfeiture order was entered.

Clear title to the BMW was vested in James. The vehicle title was issued in Texas, and no lien or encumbrance was endorsed thereon. All claims of the Appellants (except James), and all liens or security interests, were based on oral agreements. None of the liens were perfected in accordance with the motor vehicle laws of Texas, or in accordance with the Commercial Credit Code of Texas, or by any other method. No documents were executed, filed or recorded, and nothing in writing exists. Even though the title shows James to be the owner, McKinney had possession and did not intend to deliver the title to James unless and until James paid for the car. Possession of the title document is entirely different from possession of the vehicle. Texas is a title state, like Oklahoma, and a lien against a motor vehicle must be endorsed on the title to be perfected.

Appellants contend the trial court erred in ordering the BMW forfeited to the state because: (1) 21 O.S.Supp.1987 § 1738 is unconstitutional; (2) the rights of innocent third parties must be protected, and it is not required that their liens or security interests be "perfected"; (3) the BMW is not subject to forfeiture because it was not equipment used in the commission of the crime of burglary in the second degree.

In entering judgment, the trial court made the following findings:

That on April 4, 1989, the parties by and through announcements made have reduced this matter to the resolution of two (2) legal issues as set-out in Petitioner's Motion for Summary Judgment, to-

---

1. The $10,000.00 variation exists because it is not clear whether James' claim for $10,000.00 and McKinney's claim for $10,000.00 constitute one claim or two claims.

wit: (1) whether the aforesaid vehicle is equipment within the meaning of 21 O.S. 1738(A), and (2) whether Respondents having unsecured claims are owners and/or parties in interest within the meaning of 21 O.S. 1738(B)? Parties having announced the same and the Court being otherwise fully advised, finds, that this matter is reduced to the resolution of the aforesaid legal issues.

Whereupon hearing the argument of counsel, pleadings filed herein, and being otherwise fully advised the Court finds that the aforesaid vehicle was used by equipment within the meaning of 21 O.S. 1738(A) and that all Respondents, except James McKinney, Jr. are not owners and/or parties in interest within the meaning of 21 O.S. 1738(B); those Respondents not having perfected their alledged (sic) interest in the aforesaid vehicle pursuant to Texas law. The Court specifically relying on *IN THE MATTER OF FORFEITURE OF A 1977 CHEVROLET PICKUP*, 734 P.2d 857, 859 (Okl. App.1987) that "the state's rights are to the defendant's unencumbered interest in the vehicle as of the date of seizure." Respondent, James McKinney, Jr., defendant in the related criminal prosecution for Burglary Second Degree, was on the date of seizure, the sole registered owner of the vehicle, the certificate of title to the aforesaid vehicle shown no liens of any kind noted thereon. Therefore said McKinney's rights to the said vehicle were unencumbered as to any interest all other Respondents may have had and as such, the State, Petitioner herein, need only to address the rights of Respondent, James McKinney, Jr. as to the said vehicle.

In regard to the said vehicle used as equipment, the Court specifically relies on *Wienstein [Weinstein] and G.B. Nunn v. Mueller III, et al.*, 563 F.Supp. 923, 929, (1982) that "although use of a vehicle merely to transport a person to the site of illegal activity will not support forfeiture ... it is sufficient if there is probable cause to believe that the vehicle was used in any way to aid in the transfer of contraband." In the case at bar

the Court finds that Respondent, James McKinney, Jr. was exiting a private residence carrying therefrom a black VCR, walking directly to the said vehicle, that the owner of the said residence and black VCR did not consent to Respondent, James McKinney, Jr.'s unlawful entry to the residence and removal of the said black VCR, that as Respondent, James McKinney, Jr. was returning to the said vehicle, Broken Arrow Police Officer Norman Stephens approached said McKinney, McKinney then returned inside the residence with the said VCR only to shortly emerge therefrom and be placed under arrest for Burglary Second Degree. The Court finds that there is probable cause to believe the said vehicle wase (sic) used as equipment within the meaning of 21 O.S. 1738(A).

Appellants first contend that the forfeiture statute (21 O.S.Supp.1987 § 1738, supra) is unconstitutional. This contention was contained in their pleadings and in their briefs filed in District Court. It was mentioned in oral argument in the trial court. Even though the parties appear to have agreed to limit the issues to the two mentioned in the trial court's judgment, we do not believe the Appellants have effectively waived the right to present this issue on appeal.

■ First, it is contended that the statute deprives Appellants of due process of law. While the specifics are not pointed out, we must presume that procedural due process is the basis of this claim. Examination of § 1738 reveals that it provides (1) for an action to be filed, (2) notice to all interested parties, and (3) a full opportunity to be heard. The rights of innocent parties having valid claims are fully protected. Here, the Appellants obviously had notice, they filed pleadings, and the Court gave them full opportunity to present their claims. We hold that § 1738 is not unconstitutional as denying due process of law.

■ Appellants other arguments as to constitutionality are made in general terms. Their assertions may be summarized as claiming that forfeitures of privately

owned property are prohibited by the United States Constitution and the Constitution of the State of Oklahoma. However, to use Appellants' own language, "A common sense analysis of the forfeiture provisions of 21 O.S. § 1738 shows that the law is intended as another weapon for use in the fight against crime."

There is nothing new or unusual about a law providing for forfeiture of property used in connection with the commission of a crime. In *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the United States Supreme Court discussed the history of such forfeitures, both before and after the adoption of the Constitution of the United States. While the precise issue being considered in *Calero–Toledo* was procedural due process and the rights of so-called innocent parties, the Court affirmed the constitutionality of proper forfeiture statutes. In *Calero–Toledo* a Three Judge Federal Court had held a state statute authorizing forfeiture of a leased pleasure yacht, after officers found marijuana aboard the yacht, to be unconstitutional. The Supreme Court held the statute not to be unconstitutional and reversed.

Various Oklahoma decisions have recognized the validity of forfeiture statutes. Validity generally is based upon proper exercise of police power. While the property involved was neither contraband nor used in commission of a crime, in *Frost v. Ponca City*, 541 P.2d 1321, 1324 (Okl.1975), the Oklahoma Supreme Court observed:

> In certain circumstances the legislature may, in exercise of police power, provide for forfeiture and sale of contraband or property used in commission of crime. 37 O.S.1971 § 548; Annotation, Forfeiture of Auto Used in Narcotics Crime, 50 A.L.R.3d 172.

In *Nickell v. State*, 746 P.2d 1155 (Okl. Cr.1987), the Court of Criminal Appeals held that a tractor trailer used to commit larceny of gasoline was subject to forfeiture.

Appellants' contention that § 1738, supra, is unconstitutional is rejected. We hold the forfeiture provisions of said § 1738 are a valid exercise of the police power of the State; and, neither the Oklahoma Constitution nor the Constitution of the United States is offended by that statute.

Next, Appellants contend that, their rights as innocent third parties, must be protected.[2] Section 1738 specifically protects the rights of a "bona fide or innocent owner, lien holder, mortgagee, or vendor". The real issue to be decided is whether the Appellants come within the class of persons whose rights are protected by the statute. The District Court said no, and we agree.

■ The claims of Youngbloom and Echols were attempted to be created after the commission of the offense and the seizure of the BMW. In the case of *In the Matter of the Forfeiture of a 1977 Chevrolet Pickup*, 734 P.2d 857 (Okl.App.1987), the Court held that the State's rights, upon seizure of vehicle used to violate Oklahoma's drug laws, are to defendant's unencumbered interest in the vehicle as of the date of seizure. Also see: *State v. Crampton*, 30 Or.App. 779, 568 P.2d 680 (1977); *State v. One Certain Conveyance 1978 Dodge Magnum*, 334 N.W.2d 724 (Iowa 1983); and, *State v. One 1978 Chevrolet Corvette*, 8 Kan.App.2d 747, 667 P.2d 893 (1983). These two claims were properly denied for this reason alone.

■ Neither party cites any Oklahoma court decision on the issue of whether Appellants' claims of liens and security interests are required to be perfected as required by law. Neither party cites Texas statutes or decisions on this subject. It is undisputed that the asserted liens or security interests were not perfected by endorsement on the vehicle title as is required by the State of Texas. There is a presumption that the trial court acted properly in the absence of a showing otherwise. The bur-

---

**2.** C.F. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), supra.

den of showing an erroneous ruling by a trial court is on the Appellant who contends error was committed.

This is an Oklahoma case. It should be determined by Oklahoma law. However, we would give full faith and credit to a Texas ruling, in a proper case, that an enforceable lien or security interest exists, if it were properly before this Court. Appellants have not shown this Court that a valid lien or security interest existed in Texas prior to the commission of the offense by James or prior to the seizure of the BMW.

The Uniform Commercial Code authorizes the creation of a security interest. However, 47 O.S.Supp.1989 § 1110 provides for "perfection" of a security interest in a motor vehicle. With exceptions not material here, such a security interest may *only* be "perfected" by following the statutory procedure, and causing it to be endorsed on the title. The Court in *Reid v. Tinker Auto Sales, Inc.*, 786 P.2d 714 (Okl. App.1990), held that the statute must be followed.

While we express no opinion as to the rights of the parties to a particular transaction against each other (i.e., a seller and his buyer, or an owner and his lender), we hold that, as to third parties, an enforceable security interest may not be created and perfected in a motor vehicle (such as the BMW involved herein) by any method other than that prescribed by statute. The State is such a third party in this case. Appellants may be correct in asserting that, in most instances, family members and friends just don't file formal papers against each other to create or perfect liens or security interests. However, trusting a son, grandson, friend or client is one thing; and, doing the things necessary to create and "perfect" an enforceable lien, security interest or debt is another. The trial court's ruling was correct.

Appellants' contend the forfeiture statute [1738] must be strictly construed. If it is properly construed, they say, it does not require or even permit the BMW to be forfeited. The construction urged (as applicable here) is that the statute provides

for "equipment" used in the attempt or commission of burglary in the second degree may be seized and forfeited to the State.

Appellants cite the statute which defines the crime of burglary in the second degree [21 O.S.1981 § 1431] and state that the basic elements of the crime are "breaking and entering with the present intention to commit a felony or larceny". Then, Appellants contend, in effect, that the BMW was not physically used to break and enter the house, and therefore is not subject to forfeiture.

The trial court relied on *Weinstein and Munn v. Mueller*, 563 F.Supp. 923 (1982), and held there was probable cause to believe the vehicle was used as equipment within the meaning of § 1738(A). In that case, Weinstein drove in his car to pick up and pay for crates containing hashish. The crates were loaded onto a truck and taken to a warehouse where they were to be stored. Weinstein, driving his car, accompanied the truck to the warehouse. The Court stated: "Although use of a vehicle merely to transport a person to the site of illegal activity will not support forfeiture, ... it is sufficient if there is probable cause to believe that the vehicle was used in any way to aid in the transfer of contraband, ...". Then the Court said: "There was probable cause for the seizure of the car". It is significant that no contraband was transported in the car. *Weinstein* was not a forfeiture case. It was a civil action by Weinstein and Munn versus an Assistant District Attorney and other officials for damages. The Court granted the defendant's motion for summary judgment.

Section 1738 authorizes any commissioned peace officer to seize any "equipment which is used in the attempt or commission of any act of burglary in the first or second degree", and other specified crimes. While we agree that forfeiture statutes must be strictly construed against forfeiture, it is also correct that a statute must not be given a construction which thwarts the clear intention of the Legislature.

We must agree that the simple act of riding in a car or being transported in a car to or near the scene of a crime, would not, by itself, constitute the use of the car in the attempt or commission of a crime. An obvious example would include riding in a taxi to the scene when neither the driver nor the owner of the taxi had knowledge of the attempt or the commission of the crime. Other such scenarios could exclude the statutory requirement of use in the attempt or commission of the crime.

On the other hand, where, as here, an individual drives an automobile to a dwelling, parks in front of the house, then goes to the house and breaks and enters it with intention to commit a felony or a larceny, then comes out of the house carrying stolen goods and walks toward the automobile, sees the observing peace officer, turns around and returns to the house, and then comes out of the house without the stolen goods, the automobile was used in an attempt or commission of the crime of burglary in the second degree. The argument that the BMW was only used for commuting to the crime scene and therefore is not subject to forfeiture, is rejected as being contrary to the facts of this case and to the Legislative intent as clearly set forth in the statute. Also see *Nickell v. State*, supra, (tractor trailer used to commit larceny of gasoline forfeited per 21 O.S.Supp.1982 § 1721); *United States v. Harris*, 903 F.2d 770 (10th Cir.1990) (use of interstate facilities as element of crime, forfeiture of truck carrying drug trafficking paraphernalia); *Nocita v. United States*, 258 F.2d 199 (9th Cir.1958) (vehicle used in wagering enterprise conducted in violation of internal revenue laws and not "solely for commuting" to an illegal business); and *Pirkey v. State*, 327 P.2d 463 (motor and boat not "device or equipment" subject to forfeiture under statute making "telephone fishing" unlawful). The statute and the facts in *Pirkey* are clearly distinguishable from those being considered in the instant case.

The trial court correctly ruled that the BMW was subject to seizure and forfeiture.

AFFIRMED.

BAILEY, J., concurs.

ADAMS, J., concurs in part and, in part, concurs in result.

ADAMS, Judge, concurring in part and concurring in result.

I fully concur with the majority's reasoning in determining the BMW subject to forfeiture and in upholding the constitutionality of Oklahoma's forfeiture scheme. I concur in the reasoning of the majority in affirming judgment against Appellants Youngbloom and Echols. I also agree with the majority's ultimate conclusion that the trial court correctly granted judgment to the State as against Appellants McKinney, Sr. and Hicks. However, I believe the claims of James McKinney, Sr. and Denise McKinney Hicks require further analysis in order to establish a solid legal basis for the denial of their claims as a matter of law.

As noted by the majority, perfection of a security interest in an automobile is governed by 47 O.S.Supp.1989 § 1110. However, that section applies only to the perfection of a security interest, and does not govern its creation. The creation of security interests, and the rights of holders of both unperfected and perfected security interests is controlled by Article 9 of the Uniform Commercial Code, 12A O.S.1981 § 9–101 et seq. We must look to its provisions to determine the effect of the claimed security interests of McKinney, Sr. and Hicks on the rights of the State.

The rights of a holder of an unperfected security interest against third parties are controlled by 12A O.S.Supp.1985 § 9–301(1) which provides in part:

(1) Except as otherwise provided in subsection (2) of this section [not applicable here], an unperfected security interest is subordinate to the rights of:

....

    b. a person who becomes a lien creditor before it is perfected ..."

Subsection 3 of § 9–301 defines a lien creditor as a "creditor who has acquired a lien on the property involved by attachment, levy or the like...." Under these provisions, if the State became a "lien creditor"

when it seized the BMW, the State's claim is superior to those of McKinney, Sr. and Hicks.

A creditor is one in whose favor an obligation exists, and who, by reason of the obligation, is or may be entitled to money. See *Gentry v. Jeffrey*, 389 P.2d 519 (Okla. 1964). Under our forfeiture statutes, the State became a creditor when McKinney, Jr. used the BMW in the commission of a second degree burglary. By operation of law, the State acquired the right to seize the BMW, sell it, and retain the sale price. The seizure of the forfeited vehicle is similar to attachment or a levy and comes within the phrase "by attachment, levy or the like". Although McKinney, Sr. and Hicks may have valid security interests in the BMW, their interests are subordinate to the interest of the State as a "lien creditor". Under the law, the undisputed facts, and the inferences therefrom, are consistent only with judgment for the State, and therefore the trial court did not err in sustaining the State's motion for summary judgment.