OSCN Found Document:STATE ex rel. PRATER v. 2010 TOYOTA COROLLA

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. PRATER v. 2010 TOYOTA COROLLA
2015 OK CIV APP 48
350 P.3d 409
Case Number: 112092
Decided: 01/30/2015
Mandate Issued: 05/20/2015
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2015 OK CIV APP 48, 350 P.3d 409

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT. 

 

STATE OF OKLAHOMA, ex rel., DAVID W. PRATER, District Attorney of the Seventh Prosecutorial District, Plaintiff/Appellee,
v.
2010 TOYOTA COROLLA, VIN#1NXBU4EE4AZ313776, Defendant,
and
LARRY H. MILLER TOYOTA and CAPITAL ONE AUTO FINANCE, Claimants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE PATRICIA G. PARRISH, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

David W. Prater, DISTRICT ATTORNEY, Lean Paczowski, ASSISTANT DISTRICT ATTORNEY, Oklahoma City, Oklahoma, for Plaintiff/Appellee
Jared A. Looper, MICHAEL L. LOYD & ASSOCIATES, Bethany, Oklahoma, for Claimants/Appellants

JOHN F. FISCHER, PRESIDING JUDGE:

¶1 This is an appeal by an automobile dealership and finance company from the district court's grant of summary judgment in favor of the State in an action involving forfeiture of an automobile. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S.2011, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because the district court incorrectly determined that the automobile should be forfeited to the State free and clear of the security interest asserted by the dealership and finance company, we reverse that decision.

BACKGROUND

¶2 Kyle Ruston Goff, a resident of Arkansas, was stopped and arrested while driving a 2010 Toyota Corolla, VIN# 1NXBU4EE4AZ313776 (the Vehicle), in Oklahoma City. The State seized the Vehicle. On February 21, 2012, the State filed a notice of the seizure and intended forfeiture of the Vehicle pursuant to 63 O.S.2011 §§ 2-503(A)(4), 2-503(A)(6) and 2-503(B) of the forfeiture statutes, on grounds that the Vehicle was used to transport and/or conceal one or more dangerous substances in violation of the Uniform Controlled Dangerous Substances Act. 63 O.S.2011 & Supp. 2014 §§ 2-101 through 2-701. Larry H. Miller Toyota and Capital One Auto Finance (Claimants) asserted a claim against the Vehicle, the purchase of which had been financed pursuant to a Retail Installment Sale Contract (the Contract). The parties stipulated to the following facts:

1. On December 28, 2011, Larry H. Miller Toyota, an automobile dealership in Albuquerque, New Mexico, sold [the Vehicle] to Sidney D. Goff and Kyle Goff, two residents of the State of Arkansas. The purchasers of the Vehicle borrowed from [C]laimants $11,901.31 for the purchase of the Vehicle, which was financed via a retail installment contract. Under the terms of said contract, the purchasers agreed to pay 3.99% APR on their loan, with monthly payments of $201.49, beginning on February 11, 2012. The contract also provided that the purchasers gave Larry H. Miller Toyota a security interest in the Vehicle.

2. On February 11, 2012, pursuant to 63 O.S. § 2-503 et seq., the State seized the vehicle on grounds that it was being unlawfully used to traffic controlled dangerous substances.

3. Claimants had no knowledge or reason to believe that the Vehicle would be used for unlawful purposes.

4. At the time the State seized the Vehicle, Larry H. Miller Toyota had not properly perfected its lien upon the Vehicle with the State of Arkansas.

5. The current value of the Vehicle is approximately $11,780.00.

¶3 Claimants filed a motion for summary judgment with a copy of the Contract attached. Based on the parties' stipulations, Claimants maintained that the only issue before the district court was a legal issue, which they identified as whether Claimants or the State have a prior, superior interest in the Vehicle. Claimants argued that pursuant to the terms of 63 O.S.2011 §§ 2-506(H) and 2-506(I), they should be granted immediate possession of the Vehicle.[1] Those subsections provide:

H. The claimant of any right, title, or interest in the property may prove a lien, mortgage, or conditional sales contract to be a bona fide or innocent ownership interest and that such right, title, or interest was created without any knowledge or reason to believe that the property was being, or was to be, used for the purpose charged.

I. In the event of such proof, the court shall order the property released to the bona fide or innocent owner, lien holder, mortgagee or vendor if the amount due him is equal to, or in excess of, the value of the property as of the date of the seizure, it being the intention of this section to forfeit only the right, title or interest of the purchaser.

¶4 The State also sought summary judgment, arguing that, because Claimants had failed to perfect their security interest in the Vehicle, their rights were "subordinate" to the State's rights and they were not protected from forfeiture pursuant to section 2-506(H). The district court denied Claimants' motion, granted judgment in favor of the State, and ordered the Vehicle forfeited to the State. Claimants appeal.

STANDARD OF REVIEW

¶5 "Summary judgment settles only questions of law." City of Jenks v. Stone, 2014 OK 11, ¶ 6, 321 P.3d 179, 181 (citing Pickens v. Tulsa Metro. Ministry, 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082. Determining "the meaning and intent of legislative enactments" also involves a question of law. State ex rel. Dep't of Human Servs. v. Baggett, 1999 OK 68, ¶ 4, 990 P.2d 235, 238. Questions of law are subject to de novo review . . . i.e., a non-deferential, plenary and independent review of the trial court's legal ruling." Heffron v. District Court of Oklahoma County, 2003 OK 75, ¶ 15, 77 P.3d 1069, 1076 (citation omitted). We affirm the district court's grant of summary judgment only if we determine that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Stone, 2014 OK 11, ¶ 6, 321 P.3d at 181.

ANALYSIS

¶6 The controversy before us centers on provisions of the Uniform Controlled Dangerous Substances Act, particularly the forfeiture provisions, and requires us to determine the meaning of 63 O.S.2011 §§ 2-506(H) and 2-506(I), which provide relief from forfeiture. Forfeitures are not favored in law: "[T]he law abhors forfeitures and statutes authorizing forfeiture of private property are to be strictly construed." State ex rel. Redman v. $122.44, 2010 OK 19, ¶ 16, 231 P.3d 1150, 1155 (citing State ex rel. Dep't of Pub. Safety v. 1985 GMC Pickup, 1995 OK 75, ¶ 8, 898 P.2d 1280, 1282. "Forfeiture will not be allowed except when required by clear statutory language." Id.

¶7 Further, we are constrained in our analysis by fundamental rules of statutory construction. The primary goal in construing a statute is to give effect to the legislative intent. Winston v. Stewart & Elder, P.C., 2002 OK 68, ¶ 12, 55 P.3d 1063, 1068.

It is presumed that legislative intent is expressed in a statute's text and that the law-making body intended that which it expressed. Where the statute is plain and unambiguous, there is no room for judicial construction which would extend its ambit beyond the scope of the plain and unambiguous language.

Bronson Trailers & Trucks v. Newman, 2006 OK 46, ¶ 9, 139 P.3d 885, 890 (footnotes omitted). The statute "will receive the effect its language dictates." Jobe v. State ex rel. Dep't of Pub. Safety, 2010 OK 50, ¶ 13, 243 P.3d 1171, 1175 (footnote omitted). Another equally well-settled rule is that, "[i]n construing a statute, we begin with the statutory language itself." State ex rel. Macy v. Freeman, 1991 OK 59, ¶ 8, 814 P.2d 147, 153 (footnote omitted) (construing provisions of the Controlled Dangerous Substances Act).

¶8 Section 2-506(H) of the foreiture statutes provides: "The claimant of any right, title, or interest in the property may prove a lien, mortgage, or conditional sales contract to be a bona fide or innocent ownership interest." The term "lien" is a general term referring to a right in property. Young v. J.A. Young Mach. & Supply Co., 1950 OK 303, ¶ 10, 224 P.2d 971, 973-74. In Title 42, a lien is defined as "a charge imposed upon specific property, by which it is made security for the performance of an act." 42 O.S.2011 § 1. In its general definitions section, the Uniform Commercial Code (UCC) provides a similar definition for the term "security interest." 12A O.S.2011 § 1-201(35) ("Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation."). Liens may be created by contract or by operation of law. 42 O.S.2011 § 6. The Contract between Claimants and the Goffs regarding purchase of the Vehicle provides: "Security Interest. You are giving a security interest in the vehicle being purchased." The parties also stipulated that, pursuant to the Contract, the Goffs "gave Larry H. Miller Toyota a security interest in the Vehicle." We find that the Contract between the Goffs and Larry H. Miller Toyota created a contractual lien, enforceable between those parties.[2]

¶9 In its summary judgment briefs, the State did not dispute that Claimants had a security interest or lien that they could enforce against the Goffs. The State argued, however, that the provisions of sections 2-506(H) and 2-506(I) afforded Claimants no protection from forfeiture of the Vehicle because Claimants had not perfected their security interest prior to the State's seizure of the Vehicle. The State further argued that, even if Claimants' unperfected security interest did fall within section 2-506(H), the State's interest as a "lien creditor" would have priority over Claimants' unperfected security interest. According to the State, sections 2-506(H) and 2-506(I) are designed to protect only those secured creditors who have created and perfected their interest in property prior to its seizure.

¶10 The primary authority relied on by the State in support of its arguments in the district court is In re Notice of Seizure and Intended Forfeiture of One 1985 Two Door BMW Model 325, VIN No. WBAAB640F1210839, 1985 Texas License Tag 96 PNH, 1991 OK CIV APP 108, 819 P.2d 722. In that case, police seized a BMW vehicle pursuant to criminal statute, 21 O.S. Supp. 1987 § 1738,[3] because of the vehicle's use by its owner as a getaway car in the burglary of a residence. Three of the owner's relatives and his criminal defense attorney filed claims against the BMW, but the trial court denied their claims and ordered the BMW forfeited to the State. The trial court determined that the owner's interest in the BMW was "unencumbered" because on the date of seizure the BMW's certificate of title showed him as the only registered owner and there were no lien notations on the title to indicate that any of the alleged interests had been perfected. Id. ¶ 7, 819 P.2d at 724. The trial court stated in its judgment that it was "specifically relying on" In re Forfeiture of 1977 Chevrolet Pickup v. Corner Stone Bank, 1987 OK CIV APP 7, ¶ 5, 734 P.2d 857, 859, and that Court's pronouncement that "'the state's rights are to the defendant's unencumbered interest in the vehicle as of the date of seizure.'" BMW, ¶ 7, 819 P.2d at 724. The Court of Civil Appeals affirmed the trial court in BMW holding:

This is an Oklahoma case. It should be determined by Oklahoma law. However, we would give full faith and credit to a Texas ruling, in a proper case, that an enforceable lien or security interest exists, if it were properly before this Court. Appellants have not shown this Court that a valid lien or security interest existed in Texas prior to the commission of the offense by [owner] or prior to the seizure of the BMW.

The Uniform Commercial Code authorizes the creation of a security interest. However, 47 O.S.Supp. 1989 § 1110 [vehicle registration and certificates of title] provides for "perfection" of a security interest in a motor vehicle. With exceptions not material here, such a security interest may only be "perfected" by following the statutory procedure, and causing it to be endorsed on the title. . . . .

While we express no opinion as to the rights of the parties to a particular transaction against each other (i.e., a seller and his buyer, or an owner and his lender), we hold that, as to third parties, an enforceable security interest may not be created and perfected in a motor vehicle (such as the BMW involved herein) by any method other than that prescribed by statute. The State is such a third party in this case.

Id. ¶¶ 18-20, 819 P.2d at 726. In addition to that language, the State also relied on language from the concurring opinion in BMW. Judge Adams concurred in part, and, in part, concurred in the result reached by the Majority. Judge Adams noted that section 1110 of the motor vehicle license and registration act applies only to the perfection of a security interest, and does not govern its creation. For that reason, he looked to Article 9 of the Uniform Commercial Code (UCC).

The rights of a holder of an unperfected security interest against third parties are controlled by 12A O.S.Supp. 1985 § 9-301(1) which provides in part:

"(1) Except as otherwise provided in subsection (2) of this section [not applicable here], an unperfected security interest is subordinate to the rights of:
. . . .

b. a person who becomes a lien creditor before it is perfected . . ."

Subsection 3 of § 9-301 defines a lien creditor as a "creditor who has acquired a lien on the property involved by attachment, levy or the like. . . ." Under these provisions, if the State became a "lien creditor" when it seized the BMW, the State's claim is superior to those of [the claimants].

A creditor is one in whose favor an obligation exists, and who, by reason of the obligation, is or may be entitled to money. Under our forfeiture statutes, the State became a creditor when [the criminal defendant] used the BMW in the commission of a second degree burglary. By operation of law, the State acquired the right to seize the BMW, sell it, and retain the sale price. The seizure of the forfeited vehicle is similar to attachment or a levy and comes within the phrase "by attachment, levy or the like." Although [Claimants] may have valid security interests in the BMW, their interests are subordinate to the interest of the State as a "lien creditor."

BMW, 1991 OK CIV APP 108, ¶¶ 3-4, 819 P.2d at 727-28 (Adams, J., concurring in part and concurring in result) (citation omitted).

¶11 We agree with the result reached in BMW, that "[t]he trial court correctly ruled that the BMW was subject to seizure and forfeiture." Id. ¶ 27, 819 P.2d at 727. However, there are several reasons why we do not view BMW as persuasive authority or rely entirely on its rationale in our analysis in the present case.[4]

¶12 In BMW, three of the four purported "creditors" claiming liens or security interests in the vehicle were actually the criminal defendant/owner's family members. The owner's father maintained he had furnished money for the purchase of the BMW. The owner's mother maintained she had furnished money to repair the BMW after a collision. Id. ¶ 4, 819 P.2d at 723. The owner's grandmother asserted a lien against the BMW for money she loaned him to retain his criminal defense attorney. Id. The defense attorney claimed a lien or security interest for additional unpaid attorney fees. Id. The Court in BMW noted that none of these individuals had recorded or perfected their claimed interests in the vehicle pursuant to the law of either Texas (where the vehicle was purchased), or Oklahoma (where the vehicle was seized). However, all of them claimed their liens and or security interests based on alleged oral agreements with the defendant. And the same held true regarding all the claims to the BMW: "No documents were executed, filed or recorded, and nothing in writing exists." Id. ¶ 5, 819 P.2d at 723. This fact prevented the owner's parents from establishing that their claimed security interests had ever attached. See 12A O.S.2011 § 1-9-203 (Oklahoma Code Comment) ("[T]he basic method for attachment remains the authenticating (signing, or the electronic equivalent of signing) by the debtor of a security agreement that provides a description of the collateral.").

¶13 As for the BMW owner's grandmother and the criminal defense attorney, they each claimed a lien or security interest based on money or services furnished after the commission of the criminal offense and seizure of the BMW. We agree with the BMW Court that "[those] two claims were properly denied for that reason alone." BMW, ¶ 16, 819 P.2d at 725. And, regarding the grandmother's and attorney's claims, we agree with the BMW Court's reliance on In re Forfeiture of 1977 Chevrolet Pickup v. Corner Stone Bank, 1987 OK CIV APP 7, 734 P.2d 857. In that case, which also involved the forfeiture provisions of the Oklahoma Controlled Dangerous Substances Act, the Court held that because the State's interest is established at the time of seizure of the forfeited property, a bank's post-seizure lien was ineffective against the State's right to the vehicle, and the district court erred in ordering the vehicle released to the bank. In a footnote, the Court supplied these facts:

The owner was arrested and the pickup seized on July 18, 1984. The Bank lent money to the owner on July 26, 1984, and perfected its security interest in the pickup that day. The State served notice of seizure and forfeiture on the owner on August 3, 1984.

Id. n.1, 734 P.2d at 858 n.1. It was the timing of creation of the bank's security interest, which occurred after the offense and seizure, not the issue of perfection, that formed the basis for the Court's holding in 1977 Chevrolet Pickup.

We hold that the post-seizure lien of Corner Stone Bank was ineffective against the right of the State of Oklahoma and the court erred in ordering the vehicle released to the Bank. . . . The State's rights are to the [offender's] unencumbered interest in the vehicle as of the date of the seizure.

Id. ¶ 5, 734 P.2d at 859 (footnote omitted). When reading subsection 2-503(H) and subsection 2-503(I) together, the Court in 1977 Chevrolet Pickup considered that the "State acquires the value of any right, title, or interest of a defendant as of the date of the seizure, subject only to bona fide or innocent secured creditors as may have existed prior to the seizure." Id. ¶ 4, 734 P.2d at 859 (emphasis added). Therefore, we agree with the Court's analysis in BMW, but only insofar as it concerns post-seizure creation of liens or security interests. We do not construe section 2-506(H) and 2-506(I) to require a perfected security interest in order for Claimants to be protected. And, pursuant to the rules of statutory construction, we are not free to adopt such a construction.

¶14 The language of sections 2-506(H) and 2-506(I) is plain and unambiguous. It does not require Claimants to prove they have "perfected" their security interest, only that their interest in the Vehicle is "bona fide or innocent."

¶15 If the Legislature had intended that only those parties with perfected security interests in vehicles receive protection from forfeiture, it could have written a statute to explicitly provide for that requirement. It did not. But BMW imposes such a requirement in the face of silent legislative text. See Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 28, 139 P.3d 873, 881 ("Where statutory language is plain and the legislative purpose evident, we will not interject into the statute a word or phrase that alters the choice the legislature has made."). In construing the language of section 2-506, BMW departs from the ordinary meaning of the words the Legislature actually used and imputes a requirement that extends beyond their general definition. "The Legislature expresses its purpose by words." Oklahoma City Zoological Trust v. State ex rel. Pub. Emps. Relations Bd., 2007 OK 21, ¶ 6, 158 P.3d 461, 464 (footnotes omitted). In ascertaining the meaning of these words, the courts must "vigorously 'resist reading words or elements into a statute that do not appear on its face.'" Id. (quoting Bates v. U.S., 522 U.S. 23, 29, 118 S. Ct. 285, 290 (1997)).

¶16 The terms "bona fide" and "innocent" are not defined in the Controlled Dangerous Substances Act, but those terms are not synonymous with "perfected." See Black's Law Dictionary 160 (5th ed. 1979) ("Bona fide" means "[i]n or with good faith; . . . without deceit or fraud."). As between the parties to a security agreement, an unperfected lien may still be a "bona fide" lien. Further, the Legislature expressly refers to security interests "created without any knowledge or reason to believe that the property was being, or was to be, used for the purpose charged." 63 O.S.2011 § 2-506(H) (emphasis added). Oklahoma law recognizes a definite distinction between "created" and "perfected" in reference to liens and the relative interests of secured creditors.

¶17 As pointed out by the State, the laws of both Oklahoma and Arkansas provide for notation/indication of a security interest on a vehicle's certificate of title as a mechanism by which to perfect that security interest and afford subsequent potential purchasers or creditors the ability to rely on certificates of title to determine whether a vehicle is subject to an encumbrance. See 47 O.S.2011 § 1110; Ark. Code Ann. § 27-14-806. However, a failure to comply with the certificate of title statute does not nullify the contract creating the security interest; it merely affects the priority of competing claims to the vehicle. Through the vehicle forfeiture provisions, the Legislature intended to deter violations of the narcotics and dangerous drugs laws, but not at the expense of a "bona fide or innocent owner, lien holder, mortgagee or vendor." 63 O.S.2011 § 2-506(I). The Legislature specifically expressed its intent "to forfeit only the right, title or interest of the purchaser." Id. By omitting the term "perfected," it appears the Legislature did not intend to enact legislation that would require creditors whose interest was secured but unperfected and whose interests attached prior the criminal act, to compete with the State for priority. For that reason, we are not persuaded by the concurring opinion in BMW, which, pursuant to the UCC, viewed the State as a "lien creditor" with priority over an unperfected security interest.

¶18 The UCC defines "lien creditor" as "a creditor that has acquired a lien on the property involved by attachment, levy, or the like." 12A O.S.2011 § 1-9-102(52)(A). When the State seeks forfeiture of an automobile in consequence of its use in criminal activity, the State is not the equivalent of a creditor. The Oklahoma Supreme Court declared this view of the State's status long before BMW was issued. In General Motors Acceptance Corporation v. State, 1935 OK 34, 40 P.2d 654, involving a vehicle used for the unlawful transportation of intoxicating liquors in violation of prohibitory liquor laws,[5] the Court held that as against the rights of conditional seller General Motors, which failed to file its contract, "[t]he state of Oklahoma is not a creditor of an automobile used in the illegal transportation of intoxicating liquors, or of one who so uses an automobile." Id. ¶ 0, 40 P.2d at 654 (Syllabus 2). In State v. One 1965 Red Chevrolet Pickup, 2001 OK 82, ¶¶ 8-11, 37 P.3d 815, 819-20 the Court, in applying a criminal forfeiture statute (21 O.S. Supp. 1993 § 1738) similar to the civil forfeiture provisions of 63 O.S.2011 § 2-503, explained:

Personal property that is to be forfeited in consequence of its use in criminal activity must be viewed as entirely different from that which is subjected to a "forced sale" to satisfy the payment of debt. Forfeiture is a government's expropriation of the owner who used the subject property in the commission of certain crimes. It is effected, upon seizure, by a judicial proceeding, which divests one of property without compensation but does not require that it be sold. . . . [S]eizure (cum severance of title) rather than "forced sale" is the gravamen of forfeiture statutes.

1965 Red Chevrolet Pickup, 2001 OK 82, ¶ 9, 37 P.3d at 819 (original emphasis omitted) (footnote omitted). The Court also differentiated the State's role in civil forfeiture from that of a "levying judgment creditor," noting that "a forfeiture proceeding lacks the characteristics attributable to a forced sale for the satisfaction of one's debt." Id. ¶ 11, 37 P.3d at 820.

¶19 The provision of the Controlled Dangerous Substances Act providing relief from forfeiture has a two-prong requirement: (1) that the claimant "prove a lien, mortgage or conditional sales contract to be a bona fide or innocent ownership interest;" and (2) "that such right, title or interest was created without any knowledge or reason to believe that the property was being, or was to be, used for the purpose charged." Section 2-506(H). The stipulated and undisputed facts of this case establish that Claimants had a bona fide, albeit unperfected, security interest in the Vehicle and Claimants neither had knowledge of, nor consented to, the criminal act causing seizure. Claimants carried their burden of proving an innocent ownership interest in the Vehicle of the type recognized by 2-506(H). Further, it was undisputed that the amount due Claimants was in excess of the value of the Vehicle as of the date of the seizure. Therefore, the district court was required to order release of the Vehicle to Claimants pursuant to section 2-506(I).

CONCLUSION

¶20 When it drafted section 2-506, the Legislature knew how to distinguish a perfected lien from a secured but unperfected lien. Consequently, the fact that the Legislature could have, but did not use the term "perfected lien" is significant. "The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. We find no requirement in section 2-506 of the Controlled Dangerous Substances Act that an interest in a vehicle must be perfected or recorded to be "bona fide." In connection with the motions for summary judgment, the stipulation and evidentiary materials presented clearly supported Claimants' defense to the forfeiture of the Vehicle. The district court erred in granting summary judgment to the State and ordering the Vehicle forfeited. Accordingly, we reverse the judgment of the district court and remand with instructions to release the Vehicle to Claimants.

¶21 REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, V.C.J., and WISEMAN, J., concur.

FOOTNOTES

[1] Sidney and Kyle Goff had previously filed an entry of appearance in the case, reserving twenty days to file their response to the State's notice of intended forfeiture. However, neither one of the Goffs filed any further pleading in the case. The State sought summary judgment against the Goffs, and the district court granted judgment against them on April 19, 2013.

[2] In their summary judgment briefs, Claimants argued that the Contract was in effect a "conditional sales contract." At common law, a conditional sales contract reserved title in the vendor to secure any unpaid portion of the purchase price. C. Cretors Co. v. McMillan, 1925 OK 167, ¶ 0, 234 P. 189 (Syllabus 1). Prior to the adoption of the UCC, Oklahoma law provided that "the security retained by the vendor in a conditional sale agreement is not a lien, but a reservation of title in the vendor with the right to pursue the property in specie." Haubelt v. Bryan & Doyle, 1935 OK 355, ¶ 11, 43 P.2d 68, 69. See 60 O.S.1951 § 318 (repealed in 1961). We find nothing in the Contract evincing an agreement that title to the Vehicle shall remain in Larry H. Miller Toyota and not pass to the Goffs until all payments have been made.

[3] Title 21 O.S. Supp. 1987 §§ 1738(H) and 1738(I) (now numbered 21 O.S.2011 §§ 1738(J) and 1738(K)) were identical to sections 2-506(H) and 2-506(I) of the Controlled Dangerous Substances Act.

[4] BMW was released for publication by order of the Court of Civil Appeals and no party sought certiorari. Opinions released for publication by the Court of Civil Appeals have persuasive authority only and are not precedential. Tubbs v. State ex rel. Teachers' Ret. Sys. of Okla., 2002 OK 79, n.7, 57 P.3d 571, 575 n.7; Okla. Sup. Ct. R. 1.200(c)(2), 12 O.S.2011, ch. 15, app. 1.

[5] Section 7023, Compiled Oklahoma Statutes 1921 provided:

All vehicles, including automobiles, and all animals used in hauling or transporting any liquor the sale of which is prohibited by the laws of this State, from one place to another in this State in violation of the laws thereof, shall be forfeited to the state by order of the court issuing the process by virtue of which such vehicles and animals were seized, or before which the persons violating the law, or the vehicles or animals are taken by the officer or officers making the seizure.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 7, 734 P.2d 857, 58 OBJ 474, Forfeiture of a 1977 Chevrolet Pickup, Matter of
Discussed at Length
 1991 OK CIV APP 108, 819 P.2d 722, 62 OBJ 3602, In Re Notice of Seizure and Intended Forfeiture of One 1985 Two Door BMW Model 325
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 59, 814 P.2d 147, 62 OBJ 2013, State ex rel. Macy v. Freeman
Discussed
 1935 OK 34, 40 P.2d 654, 170 Okla. 355, GMAC v. STATE
Discussed
 1935 OK 355, 43 P.2d 68, 171 Okla. 338, HAUBELT v. BRYAN & DOYLE
Discussed
 2001 OK 82, 37 P.3d 815, 72 OBJ 2929, STATE v. ONE 1965 RED CHEVROLET PICKUP
Discussed at Length
 2002 OK 68, 55 P.3d 1063, WINSTON v. STEWART & ELDER, P.C.
Discussed
 1995 OK 75, 898 P.2d 1280, 66 OBJ 2327, State ex rel. Dept. of Public Safety v. 1985 GMC Pickup
Discussed
 2002 OK 79, 57 P.3d 571, TUBBS v. STATE EX REL. TEACHERS' RETIREMENT SYSTEM
Discussed
 2003 OK 75, 77 P.3d 1069, HEFFRON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2006 OK 46, 139 P.3d 885, BRONSON TRAILERS & TRUCKS v. NEWMAN
Discussed
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed
 2010 OK 19, 231 P.3d 1150, STATE ex rel. REDMAN v. $122.44
Discussed
 2010 OK 50, 243 P.3d 1171, JOBE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 1925 OK 167, 234 P. 189, 106 Okla. 260, C. CRETORS CO. v. McMILLAN
Discussed
 2014 OK 11, 321 P.3d 179, CITY OF JENKS v. STONE
Discussed at Length
 1997 OK 152, 951 P.2d 1079, 68 OBJ 4087, PICKENS v. TULSA METROPOLITAN MINISTRY
Discussed
 1950 OK 303, 224 P.2d 971, 203 Okla. 595, YOUNG v. J. A. YOUNG MACH. & SUPPLY CO.
Discussed
 1999 OK 68, 990 P.2d 235, 70 OBJ 2226, State ex. rel. Dept. of Human Services v. Baggett
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1738, 21 O.S. 1738, Seizure and Forfeiture of Vehicles, Airplanes, and Other Property Used in Crime - Procedure
Discussed at Length
Title 42. Liens
 Cite
Name
Level

 42 O.S. 1, Definition of Lien
Cited
 42 O.S. 6, Creation of Liens
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 1110, Perfection of Security Interest
Discussed
Title 60. Property
 Cite
Name
Level

 60 O.S. 318, Repealed by Laws 1961, SB 36, p. 181, § 10-102, eff. December 31, 1962
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-101, Definitions
Cited
 63 O.S. 2-503, Property Subject to Forfeiture
Discussed at Length
 63 O.S. 2-506, Seizure of Property by Peace Officer - Notice - Filing of Verified Answer - Proceeds of Sale
Discussed at Length
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 1-201, General Definitions and Principles of Interpretation
Cited
 12A O.S. 9-301, Repealed by Laws 2000, SB 1519, c. 371, § 185, eff. July 1, 2001
Cited